IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| HUAWEI TECHNOLOGIES CO., LTD. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 19-1306-MN |
| | ) | |
| L3HARRIS TECHNOLOGIES, INC. | ) | |
| | ) | |
| Defendant. | ) | |

## L3HARRIS TECHNOLOGIES, INC.'S OPENING BRIEF
## IN SUPPORT OF ITS MOTION TO TRANSFER

David M. Fry (No. 5486)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
dfry@shawkeller.com
*Attorneys for Defendant*

OF COUNSEL:
Denise De Mory
Corey Johanningmeier
Brenda Entzminger
BUNSOW DE MORY LLP
701 El Camino Real
Redwood City, CA 94063
(650) 651-7248

Dated: August 19, 2019

## TABLE OF CONTENTS

Page

I.     INTRODUCTION ................................................................................................... 1

II.    NATURE AND STAGE OF PROCEEDINGS ....................................................... 3

       A.    L3Harris's Action Against Huawei in the Eastern District of Texas..................... 3

       B.    Huawei's Pending Action Against L3Harris in the Eastern District of
             Texas .................................................................................................................. 3

III.   SUMMARY OF ARGUMENT ............................................................................... 5

IV.    STATEMENT OF FACTS ...................................................................................... 6

       A.    Huawei's Delaware and Texas LTE Patents Involve Similar Technology
             and Are Asserted as Essential to the Same LTE Standards. ................................. 6

       B.    Huawei's Delaware Patents-in-Suit Give Rise to the Same FRAND
             Counterclaims L3Harris Asserted Against the Texas Patents-in-Suit. .................. 6

       C.    Both Actions Allege the Same Infringing Acts and Accuse the Same
             Products............................................................................................................... 6

       D.    There Are Numerous Witnesses Common to Both *Huawei v. L3Harris*
             Cases. .................................................................................................................. 7

       E.    Judge Gilstrap Is Familiar with Huawei's LTE Technology. ................................ 8

V.     ARGUMENT ......................................................................................................... 9

       A.    Transfer Satisfies the Statutory Requirements of Section 1404(a): Having
             One Judge Oversee Both *Huawei v. L3Harris* Cases Prevents
             Inconvenience and Furthers the Interests of Justice. ........................................... 9

       B.    Transfer is Warranted Under the *Jumara* Public Interest Factors. ...................... 12

             1.    Practical Considerations Weigh Heavily in Favor of Transfer. ................ 12

             2.    The District of Delaware Has a "Strong Public Policy Favoring the
                   Litigation of Related Cases Before the Same Tribunal." .......................... 13

             3.    The Considerable Difference in Docket Congestion between the
                   Districts Favors Transfer.......................................................................... 14

4.    The Transferee Forum Has an Interest in Deciding this Controversy Involving Local Huawei Subsidiaries and Local Third-Party Suppliers....................................................................... 15

C.    Consideration of the *Jumara* Private Interest Factors Favors Transfer. ............... 15

1.    The Supreme Court Instructs that a Foreign Plaintiff's Choice of Forum is Entitled to Less Deference............................................................ 15

2.    L3Harris's Forum Preference Favors Transfer. ....................................... 17

3.    The Convenience of the Witnesses Considerably Favors Transfer. ......... 17

4.    The Convenience of the Parties Favors Transfer. .................................... 18

5.    The Location of Records of the Texas-Based Entities Favors Transfer. ................................................................................................... 19

6.    Huawei Asserts Claims which "Arose" in the Transferee Forum. ........... 19

VI.    CONCLUSION.............................................................................................................. 20

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Applied Predictive Technologies, Inc. v. MarketDial, Inc.,*
   C.A. No. 18-963-CFC, 2019 WL 2745724 (D. Del. July 1, 2019)..........................................18

*BlackBerry Limited v. Nokia Corp.,*
   C.A. No. 17-cv-155-RGA, 2018 WL 1401330 (D. Del. Mar. 20, 2018).......................8, 16, 19

*Cashedge, Inc. v. Yodlee, Inc.,*
   No. Civ.A. 06-170-JFF, 2006 WL 2038504 (D. Del. July 19, 2006) .................................11, 12

*Continental Grain Co. v. Barge F.B.L.,*
   364 U.S. 19, 80 S.Ct. 1470 (1960)............................................................................................15

*GE Healthcare Bio-Sciences AB v. Bio-Rad Laboratories, Inc.,*
   C.A. No. 18-1899-CFC, 2019 WL 1985183 (D. Del. May 6, 2019).........................................18

*Good Technology Corporation v. MobileIron, Inc.,*
   C.A. No. 14-1308-LPS-CJB, 2015 WL 1458091 (D. Del. Mar. 27, 2015) .......................11, 12

*Human Genome Sciences, Inc. v. Genentech, Inc.,*
   C.A. Nos. 11-082-LPS, 11-156-LPS, 11-328-LPS, 2011 WL 2911797 (D. Del. July 18,
   2011) ........................................................................................................................................11

*In re Genentech, Inc.,*
   566 F.3d 1338 (Fed. Cir. 2009) ...............................................................................................19

*In re Link_A_Media Devices,*
   662 F.3d 1221 (Fed. Cir. 2011) ........................................................................................18, 21

*In re U.S.,*
   273 F.3d 380 (3d Cir. 2001) .....................................................................................................11

*Intellectual Ventures I LLC v. Altera Corp.,*
   842 F. Supp. 2d 744 (D. Del. Jan. 24, 2012) ...........................................................................19

*Jumara v. State Farm Ins. Co.,*
   55 F.3d 873 (3d Cir. 1995) ................................................................................................13, 16

*Lony v. EI Du Pont De Nemours & Co.,*
   886 F.2d 628 (3d Cir. 1989) .....................................................................................................17

*MEC Resources, LLC v. Apple, Inc.,*
   269 F. Supp. 3d 218 (D. Del. Sept. 15, 2017)..........................................................................20

*Memory Integrity, LLC v. Intel Corp.*,
C.A. No. 13-1804-GMS, 2015 WL 632026 (D. Del. Feb. 13, 2015) ...................................... 22

*NST Global, LLC v. Sig Sauer, Inc.*,
C.A. No. 19-121-CFC, 2019 WL 2994696 (D. Del. July 9, 2019) ............................................. 15

*Piper Aircraft Co. v. Reyno*,
454 U.S. 235, 102 S.Ct. 252 (1981) ................................................................................. 17, 18

*Shutte v. Armco Steel Corp.*,
431 F.2d 22 (3d Cir. 1970) ........................................................................................................ 18

*Smithkline Corp. v. Sterling Drug, Inc.*,
406 F. Supp. 52 (D. Del. 1975) ............................................................................................. 5, 15

*Stewart Organization, Inc. v. Ricoh Corp.*,
487 U.S. 22, 108 S.Ct. 2239, 2244 (1988) .......................................................................... 10, 13

*Thomas Swan & Co. Ltd. v. Finisar Corp.*,
C.A. No. 13-178, 2014 WL 47343 (E.D. Tex. Jan. 6, 2014) .............................................. 16, 20

*Ungrund v. Cunningham Brothers, Inc.*,
300 F. Supp. 270 (S.D. Ill. 1969) ............................................................................................. 18

*Van Dusen v. Barrack*,
376 U.S. 612, 84 S.Ct. 805 (1964) ...................................................................... 10, 11, 13, 17

*Zazzali v. Swenson*,
852 F. Supp. 2d 438 (D. Del. 2012) ..................................................................................... 5, 15

**Statutes**

28 U.S.C. § 1404(a) ................................................................................................................ passim

**Rules**

Fed. R. Civ. P. 15 ....................................................................................................................... 10

Fed. R. Civ. P. 45(c)(1)(B) ........................................................................................................ 19

Defendant L3Harris Technologies, Inc. ("L3Harris") submits this Opening Brief in Support of L3Harris's Motion to Transfer Venue to the Eastern District of Texas ("Motion").  In support thereof, L3Harris respectfully shows as follows:

## I.    INTRODUCTION

L3Harris is an international communications and information technology company serving government and commercial markets.[1]  For 120 years, L3Harris has been a leader in technology and innovation, and currently leads in the fields of tactical communications, avionics, air traffic management, space and intelligence, and weather systems.[2]  L3Harris employs more than 20,000 scientists and engineers and has advanced facilities that promote innovation and collaboration.[3]  The company is incorporated in Delaware, but is headquartered in Florida and operates worldwide.[4]

Plaintiff Huawei Technologies Co., Ltd. ("Huawei") is a Chinese company, with its "Industrial Base" located in Shenzhen, China.[5]  In 2018, L3Harris sued Huawei in the Eastern District of Texas for infringement of seven of its wireless networking and security patents.  Just three months ago, Huawei filed a separate five-patent case against L3Harris in the Eastern District alleging that the same L3Harris products at issue here infringe patents covering the same technology at issue here.[6]  Huawei's Complaint here does not allege any facts tying Huawei to

---

[1] Declaration of Gerry Mitchell Evander ("Evander Decl.") ¶ 3.  L3Harris is the result of a recently completed merger of equals between Harris Corporation and L3 Technologies, Inc.  Harris Corporation was the original party to the Texas cases discussed herein, however all Harris entities referenced herein are referred to as "L3Harris" to reflect the company's current name.
[2] *Id.* ¶ 4.
[3] *Id.* ¶ 5.
[4] *Id.* ¶ 6.
[5] D.I. 1 at ¶ 3.
[6] On April 26, 2019, Huawei filed a five-patent counterclaim against L3Harris in the Eastern District, which was subsequently severed for trial purposes into a separate action, and then consolidated for pretrial purposes with L3Harris's original lawsuit against Huawei.  Pleadings for

Delaware—while in contrast, Huawei's Texas Complaint includes Plano, Texas-based Huawei subsidiaries.  Huawei's assertions implicate these Texas-based entities in this action.

Both Huawei lawsuits against L3Harris rely on unfounded allegations of infringement via practice of industry standards to which the patents are alleged to be essential, but most significantly, both actions involve patents covering Long Term Evolution ("LTE") telecommunication technology, accuse the same L3Harris products of infringement, give rise to the same FRAND counterclaims, and accuse the same third-parties as having supplied allegedly infringing components.  Because of these common elements in both actions, the cases have substantial overlapping discovery, including witnesses and documents common to both cases. Also, with many of the witnesses in this action located in Texas, including many third-party witnesses, this case would be more conveniently tried in the Eastern District of Texas.

The court overseeing the Texas *Huawei v. L3Harris* action is already familiar with the technology at issue in Huawei's Delaware patents-in-suit.  The Honorable Judge Rodney Gilstrap, who is presiding over the pending *Huawei v. L3Harris* action in Texas, has already presided over four other Huawei patent cases involving Huawei's various LTE technology patents.

Given the transferee court's substantial experience with Huawei's LTE technology and the numerous issues common to the Delaware and Texas *Huawei v. L3Harris* patent infringement actions, judicial economy is served by having one court preside over both cases.

---

Huawei's Texas action can be found on the E.D. Tex. CM/D.I. website under the Case Number 18-cv-00439-JRG (Lead Case per Judge Gilstrap's consolidation Order, D.I. 74, attached hereto as Exhibit A) or under Case Number 19-cv-00222-JRG (Member Case).

## II.     NATURE AND STAGE OF PROCEEDINGS

### A.     L3Harris's Action Against Huawei in the Eastern District of Texas

On March 12, 2018, L3Harris notified Huawei of its infringement of seven L3Harris patents with distinct innovations in routing, clustering, and scheduling, as well as security for wireless networks.[7]  Having received no response to any of its four letters sent to Huawei over the next six months, L3Harris ultimately filed suit against Huawei on October 24, 2018 in the Eastern District of Texas.[8]  In its Complaint, L3Harris accused various Huawei commercial products of infringing these seven patents.[9]

On April 26, 2019, Huawei filed its Answer to L3Harris's Complaint, but surprised L3Harris with its assertion of counterclaims for infringement of four LTE  patents and one Power over Ethernet ("PoE") patent.[10]  These Huawei patents bore no connection to the networking and security patents asserted by L3Harris's Complaint.[11]  Therefore, Judge Gilstrap severed the two Texas cases for purposes of trial at L3Harris's request, but for the sake of efficiency ordered that the two actions should be consolidated for all pre-trial purposes.[12]

### B.     Huawei's Pending Action Against L3Harris in the Eastern District of Texas

Two weeks after receipt of Judge Gilstrap's severance Order, Huawei re-filed its counterclaims as a Complaint against L3Harris in the Eastern District of Texas.[13]  Huawei's Texas infringement action against L3Harris involves the same parties as this litigation, along with four

---

[7] E.D. Tex. Case No. 18-cv-00439-JRG, D.I. 1 at ¶¶ 55, 68, 82, 94, 106, 118, 132.
[8] *Id.*
[9] *Id.* at ¶¶ 38-44.
[10] E.D. Tex. Case No. 18-cv-00439-JRG, D.I. 56 at ¶¶ 113-70.
[11] E.D. Tex. Case No. 2:19-cv-00222-JRG, D.I. 1 at 4-5.
[12] *Id.* at 7; *see also* 2:18-cv-00439-JRG, D.I. 74.
[13] E.D. Tex. Case No. 2:19-cv-00222-JRG, D.I. 4.

additional Huawei entities, two of which are Plano, Texas-based corporations.[14]

Huawei asserted five patents in its Texas infringement suit against L3Harris (collectively "the Texas patents"): United States Reissue Patent No. RE44,325 (the "'325 patent"), United States Patent No. 8,416,892 (the "'892 patent"), United States Patent No. 8,798,575 (the "'575 patent"), United States Patent No. 9,838,851 (the "'851 patent"), and United States Patent No. 10,117,226 (the "'226 patent").[15]   Four of the five Texas patents relate to aspects of LTE telecommunication technology.[16]

Huawei asserts that each of these Texas LTE patents is essential to the practice of industry standards for LTE.[17]   Similarly, Huawei has asserted that its LTE patents asserted here in Delaware are standard essential.[18]   As Huawei has admitted in Texas, and must admit here, Huawei's participation in these standards and its assertion of essential patents will subject it to FRAND obligations under the relevant patent policies of those standards setting organizations.[19]

As noted above, Judge Gilstrap is presiding over the *Huawei v. L3Harris* action involving the Texas LTE patents, as well as L3Harris's seven-patent action against Huawei.  In consolidating both parties' Texas patent infringement lawsuits, Judge Gilstrap has encouraged the parties to notify the court of any other "related cases … that may also be appropriate for consolidation with this case … [t]o further promote judicial economy and to conserve the parties' resources."[20] Transfer of this action would enable consolidation among all L3Harris-Huawei cases, further promoting judicial economy and conserving the parties' resources.

---

[14] *Id.* at ¶ 2.
[15] E.D. Tex. Case No. 2:19-cv-00222-JRG, D.I. 4 at ¶¶ 44, 57, 68, 78, 90.
[16] *Id.* at ¶¶ 58, 68, 78, 90.
[17] *Id.* at ¶¶ 64, 74, 86, 98.
[18] D.I. 1 at ¶¶ 63, 77, 87, 97.
[19] E.D. Tex. Case No. 2:19-cv-00222-JRG, D.I. 68 at 1 ("Huawei readily acknowledges that its patents are subject to FRAND obligations").
[20] 2:18-cv-00439-JRG, D.I. 77 at 2.

## III.    SUMMARY OF ARGUMENT

The connections between this case and the Eastern District of Texas are strong.  By contrast, the District of Delaware has no connection to Huawei's claims, other than the fact that L3Harris is incorporated in the state.

This forum has a strong public policy favoring the litigation of related claims before the same court.  When presented with an opportunity to transfer a case to a forum where a related action is pending, courts in this District have a "powerful reason to grant a motion to transfer."[21] As discussed below, courts in this District have repeatedly recognized the judicial economy achieved in having the same court handle related actions involving the same parties and patents within the same technical field.

This action presents a compelling case for transfer in at least six respects: (1) the technology overlap is direct—there are four Delaware LTE telecommunication patents and four Texas LTE telecommunication patents; (2) Huawei asserts that these Delaware and Texas LTE patents are essential to aspects of 3GPP standards for LTE, and as such, Huawei is subject to the same FRAND obligations for both the Delaware and Texas LTE patents; (3) Huawei accuses the same L3Harris products in both actions, therefore, the two cases will share identical document productions, document custodians and party witnesses as to those accused products; (4) Judge Gilstrap has substantial experience with Huawei's LTE telecommunication technology; (5) the risk of inconsistent rulings as to these common issues is minimized by having a single judge hear both cases; and (6) Huawei's Delaware and Texas LTE patents share common third-party suppliers of allegedly infringing components and the same evidence asserted as probative of L3Harris's knowledge of the patents.

---

[21] *Zazzali v. Swenson*, 852 F. Supp. 2d 438, 453 (D. Del. 2012) (internal citation omitted).

## IV.     STATEMENT OF FACTS

### A.     Huawei's Delaware and Texas LTE Patents Involve Similar Technology and Are Asserted as Essential to the Same LTE Standards.

Huawei asserts five patents in the instant action: United States Patent No. 7,439,969 (the "'969 patent"), United States Patent No. 8,270,371 (the "'371 patent"), United States Patent No. 9,072,011 (the "'2011 patent"), United States Patent No. 9,215,624 (the "'624 patent"), and United States Patent No. 9,655,011 (the "'5011 patent") (collectively "the Delaware patents").  Four of these five Delaware patents relate to aspects of LTE telecommunication technology.[22]  Huawei describes these Delaware LTE patents as "essential to the LTE standard[;]" Huawei uses the same assertion to describe the '892, '575, '851 and '226 Texas patents.[23]

### B.     Huawei's Delaware Patents-in-Suit Give Rise to the Same FRAND Counterclaims L3Harris Asserted Against the Texas Patents-in-Suit.

The same FRAND obligations, and violations thereof, are at issue in both *Huawei v. L3Harris* lawsuits.[24]  L3Harris acknowledges that both Delaware and Texas courts have substantial experience with FRAND issues.  However, transfer would promote efficiency and avoid disparate decisions concerning the scope of Huawei's FRAND obligations.

### C.     Both Actions Allege the Same Infringing Acts and Accuse the Same Products.

In both its Delaware and Texas infringement lawsuits, Huawei accuses L3Harris of nationwide acts of infringement, including L3Harris's alleged "use, s[ales], and/or offers to sell" specific "LTE Products."[25]  Indeed, Huawei accuses the same "LTE Products" in both actions. The accused products common to both actions include "the Gemini," "Tactical 4G LTE Radios,"

---

[22] D.I. 1 at ¶¶ 63, 77, 87, 97 (the '371,'2011, '624, and'5011 patents).
[23] *Id.*; E.D. Tex. Case No. 2:19-cv-00222-JRG, D.I. 4 at ¶¶ 53, 64, 74, 86, 98.
[24] D.I. 1 at ¶¶ 63, 77, 87, 97; E.D. Tex. Case No. 2:19-cv-00222-JRG, D.I. 4 at ¶¶ 53, 64, 74, 86, 98; *see* D.I. 5, L3Harris's Counterclaims.
[25] D.I. 1 at ¶¶ 53, 61, 67, 75, 81, 85, 91, 95; *cf.* E.D. Tex. Case No. 2:19-cv-00222-JRG, D.I. 4 at ¶¶ 57, 62, 64, 72, 74, 78, 84, 86, 90, 96, 98.

"Harris's XL Radios, [] the XL-185P Single Band Portable Radio, [the] XL-200P Multiband Portable Radio," and products using EPC components that allegedly practice the LTE standard.[26]

### D.     There Are Numerous Witnesses Common to Both *Huawei v. L3Harris* Cases.

As both *Huawei v. L3Harris* actions accuse identical L3Harris products of infringement, there will certainly be overlapping witnesses and document custodians as to these products. Additionally, there are several third-party witnesses common to the two cases.  For example, Huawei accuses Cisco of supplying allegedly infringing components in both the Delaware and Texas actions.[27]   In this action, Huawei asserts that another third party, Nokia, supplied components used in the accused products.[28]  Huawei's Texas Disclosures also identified Nokia as having relevant information pertaining to one of its Texas LTE patents.[29]  Huawei and Nokia have previously been involved in settled litigation over LTE patents in Texas before Judge Gilstrap.[30]

In Huawei's Delaware and Texas Complaints against L3Harris, Huawei identifies the same evidence of L3Harris's "knowledge" of the Delaware LTE patents-in-suit and the Texas LTE patents-in-suit.[31]  Witnesses pertaining to this evidence would be common to both actions.[32]

In the Texas action, Huawei identified the law firm of Slater Matsil as having information

---

[26] D.I. 1 at ¶ 32, 34, 35, 53, 67, 81, 91; *cf.* E.D. Tex. Case No. 2:19-cv-00222-JRG, D.I. 4 at ¶ 42, 57, 59, 68, 78, 90.

[27] D.I. 1 at ¶ 34; E.D. Tex. Case No. 2:19-cv-00222-JRG, D.I. 4 at ¶ 68.

[28] D.I. 1 at ¶ 34 (identifying Nokia as supplier of allegedly infringing components).

[29] Declaration of Corey Johanningmeier ("Johanningmeier Decl.") at ¶ 3.

[30] *Huawei Technologies Co. Ltd. v. T-Mobile US, Inc. and T-Mobile USA, Inc.*, 2:16-cv-00057-JRG-RSP, D.I. 33, D.I. 40; *Huawei Technologies Co. Ltd. v. T-Mobile US, Inc. and T-Mobile USA, Inc.*, 2:16-cv-00056-LRG-RSP, D.I. 34, D.I. 40; *Huawei Technologies Co. Ltd. v. T-Mobile US, Inc. and T-Mobile USA, Inc.*, 2:16-cv-00055-JRG-RSP, D.I. 33, D.I. 40; *Huawei v. T-Mobile*, 2:16-cv-00052-JRG-RSP, D.I. 32, D.I. 39.

[31] D.I. 1 at ¶¶ 63, 77, 87, 97; E.D. Tex. Case No. 2:19-cv-00222-JRG, D.I. 4 at ¶¶ 53, 64, 74 (typographical error in Complaint), 86, 98.

[32] *Id.*

relevant to the prosecution of its Texas '226 LTE patent.[33]  This third-party witness is common to both actions, as Slater Matsil prosecuted Huawei's Delaware '2011 LTE patent as well.[34]

### E.    Judge Gilstrap Is Familiar with Huawei's LTE Technology.

There is no doubt that if transferred, both *Huawei v. L3Harris* actions would be tried by Judge Gilstrap, who is currently presiding over the two Huawei-L3Harris actions in the Eastern District of Texas.  In addition to Judge Gilstrap's consolidation Order, which encourages the consolidation of any related cases on his Court's docket, the transferee district's General Order ensures that Judge Gilstrap will be assigned all patent cases in the division.[35]

Judge Gilstrap already has substantial experience with Huawei's LTE telecommunication technology, not only from the pending *Huawei v. L3Harris* action before him, but also because Judge Gilstrap presided over four separate patent infringement lawsuits Huawei filed against T-Mobile in the Eastern District of Texas.  In each of those four T-Mobile cases, in which Nokia intervened and filed counterclaims, Huawei alleged infringement of at least one patent relating to LTE telecommunication technology.[36]  Although Huawei's four Texas actions against T-Mobile settled before Judge Gilstrap addressed the merits, each of the four actions involved the resolution of numerous motions, several hearings, and altogether, nearly 800 docket entries.[37]  Moreover, Huawei and L3Harris are already in claim construction in the Texas action.[38]

---

[33] Johanningmeier Decl. at ¶ 4.

[34] *Id.* at ¶ 5.

[35] *See* 2:18-cv-00439-JRG, D.I. 77 at 2; *and see* Eastern District of Texas General Order 19.10 (available at http://www.txed.uscourts.gov/sites/default/files/goFiles/GO-19-10.pdf) (assigning all patent cases in the Marshall Division to Judge Gilstrap).

[36] *Huawei*, 2:16-cv-00057-JRG-RSP, D.I. 1 at ¶¶ 11, 15, 17, 19, 28, D.I. 33, D.I. 40; *Huawei*, 2:16-cv-00056-LRG-RSP, D.I. 1 at ¶¶ 11, 15, 17, 19-20, 28, D.I. 34, D.I. 41; *Huawei*, 2:16-cv-00055-JRG-RSP, D.I. 1 at ¶¶ 11, 15, 17, 19, 21-22, 27, 43, 64-66, 75-77, D.I. 33, D.I. 40; *Huawei*, 2:16-cv-00052-JRG-RSP, D.I. 1 at ¶¶ 11, 15, 17, 19, 28, D.I. 32, D.I. 39.

[37] *Id.*

[38] E.D. Tex. Case No. 18-cv-00439-JRG.

## V.     ARGUMENT

### A.     Transfer Satisfies the Statutory Requirements of Section 1404(a): Having One Judge Oversee Both *Huawei v. L3Harris* Cases Prevents Inconvenience and Furthers the Interests of Justice.

Section 1404(a) authorizes this Court to transfer any action "[f]or the convenience of the parties and witnesses" if the action could have been brought in the transferee forum, and upon weighing all relevant considerations, transfer would best serve the interests of justice and convenience.[39]  Huawei asserted in its Texas action that venue was proper against L3Harris in the Eastern District of Texas.[40]  There is no dispute that Huawei could have brought these patent claims in Texas in addition to the patent claims it did bring in Texas.[41]

To resolve the second step of the 1404(a) analysis, the court weighs "case-specific factors" to determine which forum would be most convenient and just.[42]  In enacting Section 1404(a), Congress intended to "prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense."[43]  Because the central inquiry for any venue transfer request is *convenience*,[44] "[t]he defendant is not required to show truly compelling circumstances for change of venue, but rather that all relevant things considered, the case would be better off transferred to another district."[45]

---

[39] 28 U.S.C. § 1404(a); *see Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 29, 108 S.Ct. 2239, 2244 (1988) (internal quotation omitted).

[40] E.D. Tex. Case No. 19-cv-00222-JRG, D.I. 4 at ¶ 11.

[41] *Id.*; *see also* Fed. R. Civ. P. 15.

[42] *See* 28 U.S.C. § 1404(a); *see Stewart Org.*, 487 U.S. at 29, 108 S.Ct. at 2244 (directing district courts to weigh "case-specific factors" to assess convenience and fairness).

[43] *Van Dusen v. Barrack*, 376 U.S. 612, 616, 84 S.Ct. 805, 809 (1964) (citation omitted).

[44]*Id.* at 634, at 818; *Stewart Org.*, 487 U.S. at 29-30, 108 S.Ct. at 2244.

[45] *In re U.S.*, 273 F.3d 380, 388 (3d Cir. 2001) (internal brackets and citation omitted); s*ee Van Dusen*, 376 U.S. at 616, 634, 84 S.Ct. at 809, 818 (explaining that "[s]ection 1404(a) reflects an <u>increased desire</u> to have federal civil suits tried in the federal system at the place called for in the particular case by considerations of convenience and justice," as Congress's primary concern in passing the statute was convenience) (citation omitted) (emphasis added).

Here, the most critical *case-specific* factor is the judicial economy promoted by having Judge Gilstrap hear both *Huawei v. L3Harris* lawsuits. Courts in this district have repeatedly held that "[w]here related lawsuits exist, it is in the interests of justice to permit suits involving the same parties and issues to proceed before one court."[46] *Cashedge* and *Good Technology* both present compelling analogies to the present case.

In *Cashedge*, defendant Yodlee sought to transfer the case from the District of Delaware to a forum where a related patent action was pending.[47] Both parties were incorporated in Delaware and the remaining factors did not meaningfully support transfer. Judge Farnan focused his analysis on the most important issue: the same parties were actively litigating another patent case in the transferee forum.[48] The court found that transfer was more convenient and furthered the interests of justice because the case in the transferee forum involved the same parties, similar technologies, and related patents-in-suit.[49] Under such circumstances, "judicial efficiency regarding the ease, speed, or expense of trial strongly weigh[s] in favor of transfer."[50]

In *Good Technology*, Judge Burke transferred a patent case to a forum where a related action was pending between the same parties.[51] The court found that there were significant "benefits to the judicial system" by having "one federal judge [] oversee two cases that involve

---

[46] *See e.g. Cashedge, Inc. v. Yodlee, Inc.,* C.A. No. 06-170-JFF, 2006 WL 2038504, at *2 (D. Del. July 19, 2006) (internal quotation omitted); *see Good Technology Corporation v. MobileIron, Inc.,* C.A. No. 14-1308-LPS-CJB, 2015 WL 1458091, at *9-10 (D. Del. Mar. 27, 2015); *see also Human Genome Sciences, Inc. v. Genentech, Inc.*, C.A. Nos. 11-082-LPS, 11-156-LPS, 11-328-LPS, 2011 WL 2911797, at *10 (D. Del. July 18, 2011) (finding interests of justice promoted transfer where judge presiding over the related action had significant experience with the patent technology, which "should be accorded heavy, indeed decisive, weight") (citations omitted).
[47] 2006 WL 2038504, at *2.
[48] *Id.*
[49] *Id.*
[50] *Id.*
[51] *Good Technology Corp.*, 2015 WL 1458091, at *9-10.

numerous common elements."[52]  Those common elements included similarities among the respective cases' patents-in-suit (though they involved different technologies), some uniformity among the accused products, many of the same document requests, and overlap among the witnesses and document custodians.[53]  The court concluded that the interests of justice and judicial efficiency warranted transfer because one judge would oversee these two related cases.[54]

Transfer was the just outcome in both *Cashedge* and *Good Technology* because there were substantial convenience and judicial efficiency gains by having one judge preside over related actions with overlapping issues and discovery.  In this case, there are even stronger justifications for transfer because the more numerous common issues, witnesses and documents present an increased opportunity for efficiency gains.

The two *Huawei v. L3Harris* cases concern allegedly standard-essential LTE telecommunication technology for eight of the ten Delaware and Texas patents, accuse the same L3Harris products of infringement, implicate the same third-party suppliers, and give rise to the same FRAND counterclaims.  Given all of these common elements, there will be substantial discovery overlap between the two cases.  Transfer of this action would eliminate duplicative document productions, filings, appearances, and dispute resolutions concerning the LTE technology, accused products and the third-party suppliers common to both cases.  Additionally, Judge Gilstrap has gained expertise in Huawei's LTE technology and is familiar with the FRAND-violation counterclaims that are common to the LTE patents in both *Huawei v. L3Harris* actions.

Because the statute is designed to "prevent the waste of time, energy and money, and to protect litigants, witnesses and the public against unnecessary inconvenience," the interests of

---

[52] *Id.*
[53] *Id*. at *8.
[54] *See id.*

justice would be best served by having one court try these two *Huawei v. L3Harris* actions.[55]

**B.     Transfer is Warranted Under the *Jumara* Public Interest Factors.**

Though there is no definitive list of factors to consider, and in fact, case-specific factors should direct the analysis, the Third Circuit has offered twelve interests to aid district courts in balancing 'convenience' and 'the interests of justice.'[56]  Each of these twelve *Jumara* interests[57] are addressed and considered in turn below, demonstrating that the totality of these factors warrants transfer.  Four of the six public interest factors support transfer, while the remaining two factors are either neutral or inapplicable to this case.  Of the six private interest factors, only Huawei's choice of forum weighs against transfer.  The remaining five private interests all favor transfer.

Most importantly, a holistic assessment of the gains in convenience for the judicial system, third party witnesses, and the parties warrants transfer of this action.

**1.     Practical Considerations Weigh Heavily in Favor of Transfer.**

There are many practical considerations that would make litigation of this case in the Eastern District of Texas easy, expeditious and less expensive.  As set forth above, because the two *Huawei v. L3Harris* actions involve the same LTE technology, accuse the same products, implicate the same FRAND counterclaims, and identify common third-party suppliers, the two matters will involve a substantial overlap in document productions, witnesses, and document

---

[55] *See Van Dusen*, 376 U.S. at 616 (internal quotation omitted).

[56] 28 U.S.C. § 1404(a); *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879-80 (3d Cir. 1995) (stating that there is no definitive list of factors, but reciting twelve factors that have previously been used to evaluate a Section 1404(a) transfer request); *Stewart Org.*, 487 U.S. at 29, 108 S.Ct. at 2244.

[57] Public interests include (1) practical considerations that may make the trial easy, expeditious, or inexpensive; (2) public policies of the fora; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) local interest in deciding local controversies at home; (5) enforceability of the judgment (*this factor is neutral in this case*); and (6) the applicable state law in diversity cases (*inapplicable to this case*).  Private interests include: (1) plaintiff's forum preference; (2) defendant's forum preference; (3) convenience of the witnesses; (4) convenience of the parties as indicated by their relative physical and financial position; (5) location of books and records; and (6) whether the claim arose elsewhere.  *Jumara*, 55 F.3d at 879.

12

custodians.  Transfer would enable L3Harris to produce documents for the same accused products only once.  Moreover, any discovery disputes pertaining to these L3Harris products, as well as any disputes specific to the remaining overlapping issues, can be resolved once before the same court. Thus, trying both cases in the Eastern District of Texas will eliminate needless redundancy, avoid potentially conflicting rulings, improve efficiency, and mitigate expenses—for the courts and the litigants.

Additionally, Judge Gilstrap's substantial experience with Huawei's LTE telecommunication technology from the pending *Huawei v. L3Harris* and prior *Huawei v. T-Mobile* actions will enable an easier, expeditious and less expensive litigation of this case in the Eastern District of Texas.

Indeed, it would be impractical to have two different District Judges dedicate the resources necessary to resolve the same complicated patent, discovery, and FRAND issues that are common to both Huawei actions.  To be sure, both courts are proficient in addressing complex patent litigation, but to permit a situation in which two patent cases involving the same parties, technical field, products, and counterclaims are simultaneously pending in different district courts would lead to the waste of time, energy and money that Section 1404(a) was designed to prevent.[58]

### 2. The District of Delaware Has a "Strong Public Policy Favoring the Litigation of Related Cases Before the Same Tribunal."[59]

Applying this Delaware policy to Section 1404(a) requests, courts in this District treat the prospect of "having one court decide related cases [a]s an <u>important public policy factor</u> in the analysis" and a "<u>powerful reason to grant a motion to transfer</u>."[60]  As noted above, there are many

---

[58] *See Continental Grain Co. v. Barge F.B.L.*, 364 U.S. 19, 26, 80 S.Ct. 1470, 1474 (1960).
[59] *Smithkline Corp. v. Sterling Drug, Inc.*, 406 F. Supp. 52, 55 (D. Del. 1975).
[60] *Zazzali*, 852 F. Supp. 2d at 453 (internal quotation and citation omitted) (emphasis added).

judicial economy gains by having Judge Gilstrap, who is already familiar with Huawei's LTE telecommunication technology, try both *Huawei v. L3Harris* actions involving that same technical field. This District's public policy therefore presents "a powerful reason to grant th[is] motion."[61]

### 3. The Considerable Difference in Docket Congestion between the Districts Favors Transfer.

The most recent Judicial Caseload Profiles demonstrate that the District of Delaware has nearly double as many pending cases per judgeship as the Eastern District of Texas (weighted filings for Delaware: 1,093, *cf.* E.D. Texas: 595).[62] While both districts are busy and known for their patent experience and efficient handling of patent cases, the District of Delaware has received a recent influx of cases compared with a reduction in filings in the Eastern District of Texas.[63] The median length of time between filing and trial for civil cases is presently 32.5 months in the District of Delaware, versus 17.5 months in the Eastern District of Texas.[64]

Huawei filed suit against L3Harris only months ago in the Eastern District of Texas, but already has a trial date there. Also, claim construction is already underway in the consolidated Texas actions. Because the transferee forum is available and convenient, and court congestion in this District could significantly delay the trial of this case, the interests of justice warrant transfer.

---

[61] *See id.* Parties opposing a transfer request by a defendant incorporated in Delaware often cite to a public policy in the State to encourage Delaware corporations to resolve their disputes in Delaware courts. However, "[t]hat concern is irrelevant [where] Plaintiff is not a Delaware corporation, and Defendant, which is a Delaware corporation, does not want to litigate here." *NST Global, LLC v. Sig Sauer, Inc.*, C.A. No. 19-121-CFC, 2019 WL 2994696, at *3 (D. Del. July 9, 2019) (citation omitted).

[62] The June 30, 2019 statistics for the District Courts of the United States can be found at: https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0630.2019.pdf

[63] *Id.*

[64] *Id.*

4.      **The Transferee Forum Has an Interest in Deciding this Controversy Involving Local Huawei Subsidiaries and Local Third-Party Suppliers.**

To the extent this controversy is local to any district, it is local to the Eastern District of Texas. Two Huawei subsidiaries connected to this action are incorporated in Texas and local to the Eastern District of Texas.[65] Identified third parties "Nokia and Cisco" are also in Eastern Texas. Cisco Systems, Inc. has substantial facilities in that district and Nokia Solutions and Networks US LLC is in Irving, Texas.[66] Apart from L3Harris's incorporation in Delaware, there is no hint of any connection between this case and the District of Delaware. Overall, the Eastern District's local interest in litigating this dispute outweighs that of the District of Delaware.

C.      **Consideration of the *Jumara* Private Interest Factors Favors Transfer.**

Of the private interest factors, only Huawei's forum choice weighs against transfer. Importantly, however, Huawei's forum preference does not outweigh the interests of justice served by transfer of this case. An analysis of the *Jumara* private interests establishes the Eastern District of Texas as the more convenient forum for the litigants and third-party witnesses.

1.      **The Supreme Court Instructs that a Foreign Plaintiff's Choice of Forum is Entitled to Less Deference.**

Although a plaintiff's choice of forum is entitled to deference in evaluating a transfer request, the Third Circuit instructs that "the amount of deference due is less when the plaintiff is foreign."[67] This directive follows the Supreme Court's holding in *Piper Aircraft Co. v. Reyno*,

---

[65] E.D. Tex. Case No. 2:19-cv-00222-JRG, D.I. 4 at ¶ 2.
[66] D.I. 1 at ¶ 34; *see e.g. Thomas Swan & Co. Ltd. v. Finisar Corp.*, C.A. No. 13-178, 2014 WL 47343, at *3 (E.D. Tex. Jan. 6, 2014) (Cisco's Richardson, Texas facility has 1,200 employees); *see also* Cisco Systems, Inc., Office Location Information (n.d.), https://globalcontacts.cloudapps.cisco.com/contacts/officeLocation/en_US (last visited August 14, 2019) (identifying five Texas office locations); *BlackBerry*, 2018 WL 1401330, at *1 ("Nokia Solutions and Networks US LLC [] ha[s] its principal place of business in Texas").
[67] *Lony v. EI Du Pont De Nemours & Co.*, 886 F.2d 628, 633-34 (3d Cir. 1989) (*citing Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255, 102 S.Ct. 252, 265 (1981)).

wherein the Court held that the deference normally afforded to a plaintiff's forum choice was entitled to "less than maximum force where the plaintiff [is] foreign" because the rationale underlying that deference is inapplicable.[68]  When a plaintiff chooses a home forum, the Court explained, "it is reasonable to assume that this choice is convenient[;] [w]hen the plaintiff is foreign, however, this assumption is much less reasonable."[69]  Huawei is based in China, and as a foreign plaintiff, Huawei's choice of forum must therefore be accorded less deference.[70]

In *Link_A_Media*, the Federal Circuit applied this 'less deference' standard to a transfer request in a patent case involving a foreign plaintiff.[71]  The Federal Circuit heeded the Supreme Court's instruction in *Piper*, finding that "the district court placed far too much weight on the plaintiff's choice of forum[]" because that plaintiff was a foreign, Bermuda-based, company.[72] Courts within this District have recognized this distinction as well, agreeing that "a plaintiff's forum choice in a patent case merits 'less deference' for [Section] 1404(a) purposes only if the plaintiff does not reside in the United States."[73]  Therefore while this factor may weigh against

---

[68] *Piper Aircraft*, 454 U.S. at 256, 261, 102 S.Ct. at 266, 268.  In *Piper*, the Court found that a dismissal on *forum non conveniens* grounds was proper, in part because the district court had correctly determined that a foreign plaintiff's choice of forum was owed less deference.  The Court explained that because the central inquiry of *forum non conveniens* is to "ensure that the trial is convenient" and the assumption of convenience is inapplicable to a foreign plaintiff, less deference is the proper standard.  *Id.*  In *Van Dusen*, the Supreme Court explained that Section 1404(a) was "drafted in accordance with the doctrine of *forum non conveniens*," and like that doctrine, the central purpose of Section 1404(a) is *convenience*.  376 U.S. at 634, 646 n. 30, 84 S.Ct. at 818, 824 n. 30.  Accordingly, the Supreme Court's 'less deference" directive applies to the convenience analysis of Section 1404(a) as well.  A foreign plaintiff is not owed the assumption of convenience accorded to domestic plaintiffs.  *Piper Aircraft*, 454 U.S. at 255, 102 S.Ct. at 265.
[69] *Piper Aircraft*, at 255.
[70] D.I. 1 at ¶ 3.
[71] 662 F.3d 1221, 1223 (Fed. Cir. 2011).
[72] *Id.* (*citing Piper Aircraft*, 454 U.S. at 256, 84 S.Ct. at 266).
[73] *Applied Predictive Technologies, Inc. v. MarketDial, Inc.*, C.A. No. 18-963-CFC, 2019 WL 2745724, at *3 (D. Del. July 1, 2019) (granting transfer request and noting that this 'less deference' principle was inapplicable because plaintiff was a domestic corporation); *see GE Healthcare Bio-*

transfer, it does so only slightly, since Huawei's choice of forum warrants less deference.[74]

### 2. L3Harris's Forum Preference Favors Transfer.

Since the parties already have a closely related action pending in the Eastern District of Texas, and both parties would bear less logistical and operational costs by consolidating the two actions before Judge Gilstrap, L3Harris strongly prefers that both *Huawei v. L3Harris* cases are litigated in the same forum.

### 3. The Convenience of the Witnesses Considerably Favors Transfer.

In weighing this interest, "the Court should be particularly concerned not to countenance undue inconvenience to third-party witnesses, who have no direct connection to the litigation."[75] Here, there is no hint of any relevant third-party witness that is within the subpoena power of this court. By contrast, it is clear from Huawei's assertions that there are several relevant third-party witnesses who can be compelled to appear in the Eastern District of Texas. For example, two prosecution counsel for Huawei's Delaware '2011 and '5011 patents-in-suit are in Texas and are therefore subject to the subpoena power of the transferee forum.[76]

Nokia Solutions and Networks US LLC, an alleged supplier with relevant connections to both the Delaware LTE patents and a Texas LTE patent, has its principal place of business in

---

*Sciences AB v. Bio-Rad Laboratories, Inc.*, C.A. No. 18-1899-CFC, 2019 WL 1985183, at *5 (D. Del. May 6, 2019) (reduced deference did not apply because two plaintiffs were domestic).

[74] Parties opposing transfer requests often cite *Shutte v. Armco Steel Corp.*, claiming it is "black letter law that a plaintiff's choice of forum is a paramount consideration [] and that choice [] 'should not be lightly disturbed.'" 431 F.2d 22, 25 (3d Cir. 1970) (internal quotation omitted). But the Supreme Court's more recent holding makes clear that this heightened deference is inapposite where the plaintiff is foreign. *Piper Aircraft*, 454 U.S. at 256, 84 S.Ct. at 266.

[75] *Intellectual Ventures I LLC v. Altera Corp.*, 842 F. Supp. 2d 744, 757 (D. Del. Jan. 24, 2012) (citations omitted).

[76] Johanningmeier Decl. at ¶¶ 4-7. *See* Fed. R. Civ. P. 45(c)(1)(B) ("[a] subpoena may command a person to attend a trial, hearing, or deposition … within the state where the person resides …").

Texas.[77]   The fact that the Eastern District of Texas "is a venue with usable subpoena power here weighs in favor of transfer, and not only slightly."[78]

For the third-party witnesses who do not reside in Texas, travel to the transferee forum would be more convenient than travel to the District of Delaware.  For example, the six prosecution counsel and three inventors for the '969 Delaware patent all appear to reside in California.[79]  Also, Cisco's principal place of business is in San Jose, California and it has substantial facilities in the Eastern District of Texas, where it is frequently involved in litigation.[80]  Not only would a trial in the Eastern District of Texas be more convenient for these third-party witnesses, transfer may permit a single deposition of third-party witnesses common to both *Huawei v. L3Harris* actions.

### 4.   The Convenience of the Parties Favors Transfer.

To weigh this factor, courts in this District consider "(1) the parties' physical location; (2) the associated logistical and operational costs to the parties' employees in traveling to Delaware (as opposed to the transferee district) for litigation purposes; and (3) the relative ability of each party to bear these costs ..."[81]  There is no dispute that each party has the "financial wherewithal" to litigate in Delaware, nor can there be any debate that litigation in the Eastern District of Texas would be most convenient for the parties, given the *Huawei v. L3Harris* action currently pending

---

[77] D.I. 1 ¶ 34; Johanningmeier Decl. at ¶ 3; *see e.g. BlackBerry Limited v. Nokia Corp.,* C.A. No. 17-cv-155-RGA, 2018 WL 1401330, at *1 (D. Del. Mar. 20, 2018) (noting "Nokia Solutions and Networks US LLC [as] having its principal place of business in Texas").

[78] *In re Genentech, Inc.,* 566 F.3d 1338, 1345 (Fed. Cir. 2009) (reversing lower court's denial of transfer, based in part on findings that (1) there were no witnesses who could be compelled to appear in the transferor forum and (2) "the fact that the transferee venue is a venue with usable subpoena power here weighs in favor of transfer, and not only slightly").

[79] D.I. 1, Exh. 1; Exhs. 2-5 (remaining inventors reside in China); Johanningmeier Decl. at ¶ 8.

[80] D.I. 1 at ¶ 34; *see, e.g., Thomas Swan & Co.,* 2014 WL 47343, at *3 (Cisco's Richardson, Texas facility has 1,200 employees); Cisco Systems, Inc., Office Location Information (n.d.), https://globalcontacts.cloudapps.cisco.com/contacts/officeLocation/en_US (last visited August 14, 2019) (Cisco is headquartered in San Jose, California and has five offices located in Texas).

[81] *MEC Resources, LLC v. Apple, Inc.,* 269 F. Supp. 3d 218, 225 (D. Del. Sept. 15, 2017).

in that forum, and the issues and witnesses which overlap with this case.

L3Harris has no employees in the State of Delaware who are connected to this action.[82] By contrast, the two Texas-based Huawei subsidiaries with connections to this lawsuit reside in the Eastern District of Texas in Plano, Texas.[83]  Because Judge Gilstrap has encouraged the parties to consolidate any related actions with the parties' pending Texas cases, transfer of this action would eliminate duplicative attorney appearances and filings on disputes that are common to the two *Huawei v. L3Harris* actions.  Accordingly, this factor also favors transfer.

### 5.    The Location of Records of the Texas-Based Entities Favors Transfer.

"While advances in technology may alter the weight given to th[is] factor," the court must consider the location of the relevant books and records when weighing a transfer request.[84] Because the headquarters of Nokia Solutions and Networks US LLC are in Texas, L3Harris anticipates that at least some of the documents relevant to Huawei's component infringement claims are in Texas.  Also, prosecution counsel's records related to the '2011 and '5011 patents would likely be at their Dallas and Plano offices, respectively.   With no indication of any countervailing records in Delaware, this factor supports transfer.

### 6.    Huawei Asserts Claims which "Arose" in the Transferee Forum.

Courts in this District evaluate this factor by examining where the accused products were developed, designed or manufactured.[85]  L3Harris did not develop, design or manufacture any of the accused products in Delaware.[86]  By contrast, Huawei's assertions implicate claims which "arose" in Texas.  Huawei designated two Texas-based Huawei subsidiaries as plaintiffs in its

---

[82] Evander Decl. at ¶ 7.
[83] E.D. Tex. Case No. 2:19-cv-00222-JRG, D.I. 4 at ¶ 2; Johanningmeier Decl. at ¶ 9.
[84] *In re Link_A_Media*, 662 F.3d at 1224.
[85] *See e.g. Memory Integrity, LLC v. Intel Corp.*, C.A. No. 13-1804-GMS, 2015 WL 632026, at *3-4 (D. Del. Feb. 13, 2015).
[86] Evander Decl. at ¶ 8.

Texas infringement action against L3Harris.  If these Texas-based entities were allegedly 'damaged by' the acts of infringement Huawei asserted in its Texas lawsuit, it follows that these allegations must also apply to the present action, as this case asserts the same LTE technology, identical acts of infringement and the same accused products.

Consequently, this factor favors transfer.

## VI.    CONCLUSION

To avoid having two District Courts adjudicate identical discovery issues arising out of the same LTE technology, the same accused products, and the same FRAND counterclaims, judicial economy warrants transfer.  Additionally, transfer will promote convenience to the third-party witnesses and parties, as well as consistency in judicial decisions.

Accordingly, L3Harris respectfully requests that the Court grant the motion to transfer venue to the Eastern District of Texas.

Respectfully submitted,

*/s/ David M. Fry*
David M. Fry (No. 5486)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
dfry@shawkeller.com
*Attorneys for Defendant*

OF COUNSEL:
Denise De Mory
Corey Johanningmeier
Brenda Entzminger
BUNSOW DE MORY LLP
701 El Camino Real
Redwood City, CA 94063
(650) 651-7248

Dated: August 19, 2019