**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| HUAWEI TECHNOLOGIES CO., LTD.,<br><br>              Plaintiff,<br><br>    v.<br><br>L3HARRIS TECHNOLOGIES, INC.,<br><br>              Defendant. | C.A. No. 19-1306-MN |

**PLAINTIFF HUAWEI TECHNOLOGIES CO., LTD.'S OPPOSITION TO
L3HARRIS'S MOTION TO TRANSFER**

Dated:  September 3, 2019

Of Counsel:

Kevin J. Post
Alexander E. Middleton
ROPES & GRAY LLP
1211 Avenue of the Americas
New York, NY 10036-8704
(212) 596-9000
kevin.post@ropesgray.com
alexander.middleton@ropesgray.com

James R. Batchelder
ROPES & GRAY LLP
1900 University Avenue, 6th Floor
East Palo Alto, CA 94303-2284
(650) 617-4000
james.batchelder@ropesgray.com

YOUNG CONAWAY STARGATT &
TAYLOR, LLP

Adam W. Poff (No. 3990)
Anne Shea Gaza (No. 4093)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE  19801
(302) 571-6600
apoff@ycst.com
agaza@ycst.com
swilson@ycst.com

*Attorneys for Plaintiff*

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................... 1

II.     NATURE AND STAGE OF PROCEEDINGS ....................................................... 2

      A.      Pending Litigation in ED Texas.................................................................. 2

      B.      Pending Litigation Before This Court........................................................ 4

III.    SUMMARY OF ARGUMENT ............................................................................... 5

IV.     STATEMENT OF FACTS ...................................................................................... 6

      A.      The Delaware and Texas Patents Involve Distinct Technologies............................ 6

      B.      The FRAND Issues in the Delaware and Texas Litigations Require
            Determination of Distinct Issues, Specific to Individual Patents. ...................... 7

      C.      Huawei Proposed a Cross-Use Discovery Agreement Between the
            Delaware and Texas Litigations to Eliminate Duplicative Discovery
            Issues, to Which L3Harris Has Not Agreed........................................................ 7

      D.      Judge Gilstrap Is Not Familiar With Huawei's Delaware Patents........................ 7

V.      LEGAL STANDARD AND L3HARRIS'S BURDEN ........................................... 8

VI.     ARGUMENT ......................................................................................................... 8

      A.      L3Harris Has Not Shown that Huawei's Claims Could Have Been Brought
            in ED Texas.......................................................................................... 9

      B.      Transfer Would Create Complexities, Not Convenience. ................................. 10

      C.      The Private Factors Weigh Against Transfer................................................. 12

            1.      Huawei's Forum Preference Strongly Weighs Against Transfer. ........... 12

            2.      L3Harris's Choice of Forum Deserves Minimal Weight........................ 14

            3.      The Claim Did Not Arise in ED Texas................................................. 14

            4.      The Parties' Relative Physical and Financial Condition Weigh
                   Against Transfer.............................................................................. 14

            5.      The Convenience of the Witnesses Does Not Support Transfer.............. 16

6.      The Location of Books and Records Does Not Support Transfer. ........... 17

D.      The Public Factors Weigh Against Transfer. ........................................................ 17

1.      Practical Considerations Would Not Make Trial Easier, More
         Expeditious, or Less Expensive in ED Texas. .......................................... 17

2.      Relative Administrative Difficulty in the Fora Does Not Support
         Transfer. ................................................................................................... 19

3.      Local Interests in Deciding Local Controversies Do Not Favor
         Transfer. ................................................................................................... 19

4.      The Public Policies of the Fora Factor Does Not Support Transfer. ........ 20

VII.    CONCLUSION ............................................................................................................ 20

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*ADE Corp. v. KLA-Tencor Corp.*,
  138 F. Supp. 2d 565 (D. Del. Apr. 10, 2001).....................................................................15, 17

*Cashedge, Inc. v. Yodlee, Inc.*,
  No. 06-170 JJF, 2006 WL 2038504 (D. Del. July 19, 2006)...................................................12

*Cellectis S.A. v. Precision Biosci., Inc.*,
  858 F. Supp. 2d 376 (D. Del. 2012).........................................................................................17

*Cypress Semiconductor Corp. v. Integrated Circuit Sys., Inc.*,
  No. 01-199-SLR, 2001 WL 1617186 (D. Del. Nov. 28, 2001) ...............................................17

*Deere & Co. v. AGCO Corp.*,
  Nos. 18-827-CFC, 18-828-CFC, 2019 WL 140886 (D. Del. Jan. 9, 2019)...............................5

*Ericsson, Inc. v. D-Link Sys., Inc.*,
  773 F.3d 1201 (Fed. Cir. 2014)................................................................................................11

*GE Healthcare Bio-Sciences AB v. Bio-Rad Labs., Inc.*,
  No. 18-1899-CFC, 2019 WL 1985183 (D. Del. May 6, 2019) ...................................10, 13, 17

*Good Tech. Corp. v. MobileIron, Inc.*,
  No. 14-1308-LPS-CJB, 2015 WL 1458091 (D. Del. Mar. 27, 2015)......................................12

*Human Genome Sciences, Inc. v. Genentech, Inc.*,
  No. 11-082-LPS, 2011 WL 2911797 (D. Del. July 18, 2011)................................................12

*Intellectual Ventures I LLC v. Altera Corp.*,
  842 F. Supp. 2d 744 (D. Del. 2012)................................................................................ *passim*

*Intuitive Surgical, Inc. v. Auris Health, Inc.*,
  No. 18-1359 (MN), 2019 WL 2327659 (D. Del. May 31, 2019) ................................... *passim*

*Jumara v. State Farm Ins. Co.*,
  55 F.3d 873 (3d Cir. 1995)........................................................................................5, 8, 13, 16

*In re Link_A_Media*,
  662 F.3d 1221 (Fed. Cir. 2001)..........................................................................................13, 14

*Lony v. EI Du Pont De Nemours & Co.*,
  886 F.2d 628 (3d Cir. 1989).....................................................................................................13

*Mallinckrodt Inc. v. E-Z-Em Inc.*,
  670 F. Supp. 2d 349 (D. Del. 2009)...................................................................11

*McRo, Inc. v. Activision Blizzard, Inc.*,
  No. 12-1508-LPS-CJB, 2013 WL 6571618 (D. Del. Dec. 13, 2013)......................16

*Microsoft Corp. v. Geotag Inc.*,
  847 F. Supp. 2d 675 (D. Del. 2012)...................................................................16

*NST Global, LLC v. Sig Sauer, Inc.*,
  No. 19-121-CFC, 2019 WL 2994696 (D. Del. July 9, 2019) ...............................20

*Piper Aircraft Co. v. Reyno*,
  454 U.S. 235 (1981).......................................................................................13

*Pragmatus AV, LLC v. Yahoo! Inc.*,
  No. 11-902-LPS-CJB, 2012 WL 4889438 (D. Del. Oct. 15, 2015).......................13

*Praxair, Inc. v. ATMI, Inc.*,
  No. 03-1158-SLR, 2004 WL 883395 (D. Del. Apr. 20, 2004)..............................11

*Shutte v. Armco Steel Corp.*,
  431 F.2d 22 (3d Cir. 1970).......................................................................8, 9, 13

*Tessera, Inc. v. Broadcom Corp.*,
  No. 16-379-LPS-CJB, 2017 WL 1065865 (D. Del. Mar. 21, 2017)................14, 20

*Van Dusen v. Barrack*,
  454 U.S. 235 (1981).......................................................................................13

*Varian Med. Sys., Inc. v. Elekta AB*,
  No. 15-871-LPS-CJB, 2016 WL 3341865 (D. Del. June 8, 2016)........................16

*Virentem Ventures, LLC v. Youtube, LLC*,
  No. 18-917 (MN), 2019 WL 2131877 (D. Del. May 16, 2019) ............................17

*VLSI Tech. LLC v. Intel Corp.*,
  No. 18-966-CFC, 2018 WL 5342650 (D. Del. Oct. 29, 2018) ............10, 11, 14, 18

*Wiremed Tech. LLC v. Adobe Inc.*,
  No. 18-1066 (MN) 2019 WL 2250643 (D. Del. May 24, 2019) ......................14, 20

**Statutes**

28 U.S.C. § 1404...........................................................................1, 8, 9, 13

iv

**TABLE OF DEFINITIONS**

| | |
|---|---|
| **Delaware Litigation** | *Huawei Techs. Co., Ltd. v. L3Harris Techs., Inc.*, Case No. 1:19-cv-01306 (MN) (D. Del.) |
| **L3Harris Texas Litigation** | *Harris Corp. v. Huawei Device USA, Inc.*, Case No. 2:18-cv-439-JRG (E.D. Tex.) |
| **Huawei Texas Litigation** | *Huawei Device USA, Inc. v. Harris Corp.*, Case No. 2:19-cv-222-JRG (E.D. Tex.), severed counterclaims from the L3Harris Texas Litigation |
| **Texas Litigations** | Collectively, the L3Harris Texas Litigation and Huawei Texas Litigation |
| **Delaware Patents** | Collectively, the Huawei Delaware Patents and L3Harris Delaware Patents |
| **Texas Patents** | Collectively, the Huawei Texas Patents and L3Harris Texas Patents |

**Huawei Delaware Patents (Delaware Litigation)**

| | |
|---|---|
| U.S. Patent No. 7,439,969 ("the '969 patent") | D.I. 1, Ex. 1 |
| U.S. Patent No. 9,072,011 ("the '2011 patent") | D.I. 1, Ex. 2 |
| U.S. Patent No. 9,655,011 ("the '5011 patent") | D.I. 1, Ex. 3 |
| U.S. Patent No. 8,270,371 ("the '371 patent") | D.I. 1, Ex. 4 |
| U.S. Patent No. 9,215,624 ("the '624 patent") | D.I. 1, Ex. 5 |

**L3Harris Delaware Patents (Delaware Litigation Counterclaims)**

| | |
|---|---|
| U.S. Patent No. 7,440,572 ("the '572 patent") | D.I. 8, Ex. 1 |
| U.S. Patent No. 7,082,117 ("the '117 patent") | D.I. 8, Ex. 2 |
| U.S. Patent No. 6,986,161 ("the '161 patent") | D.I. 8, Ex. 3 |

**L3Harris Texas Patents (L3Harris Texas Litigation)**

U.S. Patent No. 6,535,227 ("the '227 patent")          Middleton Decl., Ex. 1[1]

U.S. Patent No. 6,958,986 ("the '986 patent")          Middleton Decl., Ex. 2

U.S. Patent No. 6,980,537 ("the '537 patent")          Middleton Decl., Ex. 3

U.S. Patent No. 7,027,426 ("the '426 patent")          Middleton Decl., Ex. 4

U.S. Patent No. 7,224,678 ("the '678 patent")          Middleton Decl., Ex. 5

U.S. Patent No. 7,327,690 ("the '690 patent")          Middleton Decl., Ex. 6

U.S. Patent No. 7,440,572 ("the '572 patent")          Middleton Decl., Ex. 7


**Huawei Texas Patents (Huawei Texas Litigation)**

U.S. Patent No. RE44,325 ("the '325 patent")          Middleton Decl., Ex. 8

U.S. Patent No. 8,416,892 ("the '892 patent")          Middleton Decl., Ex. 9

U.S. Patent No. 8,798,575 ("the '575 patent")          Middleton Decl., Ex. 10

U.S. Patent No. 9,838,851 ("the '851 patent")          Middleton Decl., Ex. 11

U.S. Patent No. 10,117,226 ("the '226 patent")          Middleton Decl., Ex. 12

---

[1] Exhibits numbers refer to those cited in the Declaration of Alexander Middleton, unless otherwise cited.  All emphasis added unless otherwise noted.

## I.     INTRODUCTION

L3Harris's Motion to Transfer (D.I. 12) ("Motion" or "Mot.") is a misguided attempt to gain a litigation advantage in pending cases between Huawei[2] and L3Harris[3] in the Eastern District of Texas ("ED Texas") (collectively, "Texas Litigations").[4]  On the same day that it filed this Motion, L3Harris filed an Answer and Counterclaims, claiming infringement of three patents.  Remarkably, L3Harris already asserted one of those patents (the '572 patent) against Huawei in the Texas Litigation, but against fewer products.  If this Motion were granted, L3Harris will have improperly split its claims and successfully circumvented ED Texas's Local Rules by adding its belated new accused products not included in its Texas contentions.

With its true motive as a backdrop, L3Harris's Motion is deficient because it (1) fails to show that venue and personal jurisdiction in ED Texas are proper for Huawei's claims, and (2) fails to meet the high burden required for the Court to transfer under 28 U.S.C. § 1404.  Instead, L3Harris presents arguments that contradict positions it took in the Texas Litigations when arguing successfully for severance.  For example, L3Harris asserts here that combining the Delaware and Texas Litigations would create efficiency gains since eight out of the nineteen total patents in the Litigations relate to LTE.  But in the Texas Litigations, L3Harris argued—and Judge Gilstrap agreed—that the patents at issue there were different, arguing that the L3Harris Texas Patents themselves involved distinct technology (*e.g.*, cryptology, intrusion detection, and

---

[2] Huawei Technologies Co., Ltd. is the sole plaintiff in this action.  The pending litigations in ED Texas include the following Huawei entities: Huawei Device USA, Inc., Huawei Technologies USA Inc., Huawei Technologies Co. Ltd., and Huawei Device (Shenzhen) Co., Ltd.

[3] According to Defendant, on June 29, 2019, Harris and L3 completed a previously announced merger of equals.  Mot. n.1.  For purposes of this Opposition, references to "L3Harris" include Harris Corporation, a party to the Texas Litigations.

[4] *Harris Corp. v. Huawei Device USA, Inc.*, Case Nos. 2:18-cv-439-JRG (E.D. Tex.); *Huawei Device USA, Inc. v. Harris Corp.*, 2:19-cv-222-JRG (E.D. Tex.).  The -222 matter includes patent infringement claims that Huawei originally filed as counterclaims in the -439 action, but were severed at L3Harris's request.  *See* Ex. 16 (2:18-cv-439-JRG, D.I. 73 (Jun. 12, 2019)).

network routing, scheduling and clustering) and the L3Harris and Huawei Texas Patents do not present common or overlapping questions of law or fact, such that they should not be tried together.  Ex. 16 at 4-5.  As part of this argument, L3Harris acknowledged that, "even in a case where all the patents were directed to LTE standards and implicated FRAND," there are "highly patent-specific issues" at play.  Ex. 15 at 3.  Indeed, Judge Gilstrap concluded that "[t]rying these technologically disparate patents in one case creates no efficiency gains."  Ex. 16 at 4-5.  The addition of the seven new Delaware Patents to the Texas Litigations would not create efficiency gains where, under L3Harris's own logic, none existed for the patents already at issue in Texas.

L3Harris's Motion is also premised on a misstatement of Judge Gilstrap's severance order.  L3Harris asserts that Judge Gilstrap encouraged the parties to notify the court of any other "related cases . . . that may also be appropriate for consolidation with this case."  Mot. 4.  But Judge Gilstrap actually asked the parties to identify "related cases *currently pending on the Court's docket* that may also be appropriate for consolidation with this case."  Ex. 17 at 2.  Because the Texas Litigation is already proceeding through claim construction, and the patented technology is not related under L3Harris's own argument, consolidation would not be appropriate and Judge Gilstrap's request is not relevant here.  Indeed, transfer of the eight Delaware Patents at this stage would likely require them to proceed on a later timeline than the current Texas Litigations, thereby negating any of L3Harris's claimed efficiency benefits.

Because L3Harris has not met its high burden to show that transfer is appropriate, the Court should deny L3Harris's Motion.

## II.    NATURE AND STAGE OF PROCEEDINGS

### A.    Pending Litigation in ED Texas

On February 15, 2019, L3Harris filed an Amended Complaint for Patent Infringement against Huawei, alleging infringement of seven patents related to distinct technology areas.  Ex.

13.  L3Harris accused three general categories of Huawei products: (1) Intrusion Detection Products; (2) Wi-Fi products; and (3) Zigbee products.  *Id.* ¶¶ 26-42.  Relevant here, L3Harris accused only Huawei's Zigbee products of infringing the '572 patent.  *Id.* ¶¶ 119-32.

L3Harris served its infringement contentions on April 3, 2019.  Again, L3Harris identified only "The Huawei Zigbee Products" as infringing the '572 patent.  Ex. 18 at 3-4, 13. L3Harris's infringement contentions are deemed its "final contentions," except that it may amend its contentions in light of the Court's claim construction order.  E.D. Tex. P.R. 3-6.

On April 26, 2019, Huawei filed its Answer and Counterclaims, asserting four patents against L3Harris LTE devices (including LTE Mobile Devices, LTE Base Stations, Evolved Packet Core (EPC) components, and devices that include LTE Multi-cell/multicast Coordination Entity (MCE) functionality), and one patent against Power-over-Ethernet (PoE) devices.

L3Harris filed a Motion to Sever Huawei's Counterclaims (Ex. 14), making the following arguments that contradict its arguments in the present Motion:

> [T]here is significant risk of jury confusion in Huawei's proposal to cover **up to twelve patents on distinct technologies, four distinct sets of industry standards, asymmetrical FRAND issues, and multiple damages models in one trial**.
>
> [T]his Court has recognized that "[t]rying these technologically disparate patents in one case creates no efficiency gains," and that damages in FRAND cases "raise highly patent-specific issues," **even in a case where all the patents were directed to LTE standards and implicated FRAND.**[5]
>
> **Huawei's infringement counterclaims concern different networking technologies and standards, accuse different categories of products in different markets, implicate no common witnesses or evidence, and will require completely separate analyses for claim construction, infringement, validity, and damages**—including because Huawei's asserted patents are subject to FRAND obligations whereas [L3]Harris's asserted patents are not.

---

[5]  Ex. 15 at 2-3.

[B]ecause **there is no overlap of issues**, there is no reason to expect that Huawei's counterclaims **will not simply double the parties' collective need for access to judicial and factfinder resources** to resolve all of the issues of the claims.[6]

Judge Gilstrap agreed with L3Harris and severed the cases:

The [L3]Harris Patents and the Huawei Patents do not share similar technologies, and severance would simplify an already complex matter. . . . [T]he **[L3]Harris Patents themselves involve interrelated, yet distinct, technologies (e.g., cryptography; intrusion detection; and network routing, scheduling, and clustering)**. Moreover, the **technological differences between the [L3]Harris and Huawei Patents do not present common or overlapping questions of law or fact, thus necessitating different witnesses, experts, and documentary proof to resolve the parties' respective disputes.** Further adding the complexity of the Huawei Patents to the factual considerations that the fact-finder would already be tasked with as to the [L3]Harris Patents risks jury-confusion. Indeed, "**[t]rying these technologically disparate patents in one case creates no efficiency gains**."[7]

Although the counterclaims were severed, because both the claims and counterclaims were on the same pace, Judge Gilstrap consolidated them for discovery purposes.  Ex. 17.

The parties filed the Joint Claim Construction Statement for the Texas Patents on August 22, 2019.  Claim construction discovery will be complete by September 19, 2019, and opening claim construction briefs, technical tutorials, substantial completion of document production, and privilege logs are due October 3, 2019.  The *Markman* hearing is scheduled November 21, 2019.

On August 29, 2019, on the last day permitted without leave of the court, Huawei filed an Amended Complaint, adding L3 Technologies, Inc. ("L3") as a party, alleging that L3's PoE products infringe one of Huawei's currently asserted Texas Patents.

### B.    Pending Litigation Before This Court

On July 12, 2019, Huawei filed the present action against L3Harris, asserting four patents related to various features of the LTE standard and one patent related to map navigation on

---

[6]  Ex. 14 at 1, 4-5.
[7]  Ex. 16 at 4-5 (internal citations and footnotes omitted).

touchscreen devices.  None of the Huawei Delaware Patents is related to the Huawei Texas Patents.  While certain Huawei Patents in both cases relate to LTE, the patents relate to different features and accused functionality, as demonstrated by the different standard documents used to support Huawei's infringement claims.[8]

L3Harris filed its Answer and Counterclaim on August 19, 2019, alleging infringement of three patents.  One of these—the '572 patent—was already asserted in the Texas Litigation, where L3Harris had accused only Huawei's Zigbee products.  But then, in Delaware, L3Harris asserted claims of the same patent against a larger set of Huawei products, including all that comply with WPA2 IEEE 802.11i (IEEE Std 802.11-2007).  The '117 and '161 patents are not related to any L3Harris Texas Patent, but have similar claims to two L3Harris Texas Patents.

## III.   SUMMARY OF ARGUMENT

1.  The Court should deny L3Harris's Motion because L3Harris has failed to show that Huawei could have brought this action in ED Texas.  *Deere & Co. v. AGCO Corp.*, Nos. 18-827-CFC, 18-828-CFC, 2019 WL 140886, at *1-2 (D. Del. Jan. 9, 2019).  While L3Harris in its Answer in the Texas Litigations waived its right to argue that venue was improper and that the Court lacked personal jurisdiction, it expressly denied that ED Texas has venue or jurisdiction over L3Harris *for other proceedings*, including this one.

2.  The Court should also deny L3Harris's Motion because the *Jumara* factors weigh strongly against transferring.  Huawei's preferred forum—the "paramount consideration" in this analysis—strongly favors not transferring.  *Intuitive Surgical, Inc. v. Auris Health, Inc.*, No. 18-1359 (MN), 2019 WL 2327659, at *2 (D. Del. May 31, 2019).  And transfer to ED Texas would

---

[8] Ex. 19 ¶¶ 58-59 ('892 Patent: TS 36.211, TS 36.213, TS 36.300), 69 ('575 Patent: TS 29.203, TS 29.212), 79-81 ('851 Patent: TS 36.300, TS 25.446), 91-93 ('226 patent: TS 36.300, TS 36.443); D.I. 1 ¶¶ 54-58, 68-72 ('5011, '2011 Patents: TS 36.331, 36.423), 82, 92 ('371, '624 Patents: TS 36.300, TS 36.413).

*increase* the complexity of the ongoing proceedings there, because transfer would either turn the

Texas litigation involving twelve unrelated patents into litigation involving nineteen unrelated

patents, or else result in two Texas Litigation schedules that provide no efficiency gains over

having this Court handle the Delaware Litigation.  The remaining factors either weigh against

transfer or are neutral, and thus, the overall weight of the factors support a denial of transfer.

## IV.    STATEMENT OF FACTS

### A.    The Delaware and Texas Patents Involve Distinct Technologies.

The nineteen patents[9] asserted between Huawei and L3Harris in the Delaware and Texas

Litigations are directed to distinct technology areas.  Judge Gilstrap held that the seven L3Harris

Texas Patents (including the '572 patent) are themselves distinct, relating to cryptology,

intrusion detection, and network routing, and scheduling and clustering.  Ex. 16 at 4-5.  Beyond

the '572 patent, L3Harris further asserts two unrelated patents in Delaware related to a mobile

ad-hoc network (MANET).  D.I. 8 ¶¶ 221-27, 347-72.  Eight of Huawei's patents involve various

features and functionality of the broad LTE standard, including disclosures from a variety of

different standard documents.  *See* n.8.  For example, the Huawei Delaware LTE Patents

generally relate to specific features in a handover (*e.g.*, when a phone moves from one cell to

another cell) for user equipment (*e.g.*, cell phones), whereas the Huawei Texas LTE Patents

relate to multicasting, charging customers of LTE networks, and random access for mobile

devices.  Ex. 19 ¶¶ 58-59, 69, 79-81, 91-93; D.I. 1 ¶¶ 54-58, 68-72, 82, 92.  In fact, for even one

release of the LTE standard, 3GPP has published at least 958 technical documents describing

various aspects of the technology.[10]  In addition, Huawei's non-LTE patents relate to map

navigation on touchscreen devices and Power-over-Ethernet functionality (pursuant to a IEEE

---

[9] The '572 patent is not double-counted since it is improperly asserted in both jurisdictions.
[10] *See* https://www.3gpp.org/dynareport/SpecList.htm?release=Rel-15&tech=3&ts=1&tr=1.

standard).  D.I. 1 ¶¶ 13-17, 38-44; Ex. 19 ¶¶ 12-16, 43-48.

> **B.      The FRAND Issues in the Delaware and Texas Litigations Require Determination of Distinct Issues, Specific to Individual Patents.**

The FRAND issues that will be adjudicated by the Delaware and Texas courts are highly patent-specific because each court must assess the apportionment of the value of each patent from the standard.  As noted above (n.8), Huawei's LTE patents involve a variety of standard documents related to distinct features, which will present unique issues for each patent.

> **C.      Huawei Proposed a Cross-Use Discovery Agreement Between the Delaware and Texas Litigations to Eliminate Duplicative Discovery Issues, to Which L3Harris Has Not Agreed.**

Huawei recently proposed a cross-use agreement so that the parties can avoid potential discovery that might otherwise be duplicative between the Delaware and Texas Litigations.  Thus, to the extent there are the same accused products, infringing acts, or party or third-party witnesses in both litigations, the parties can avoid duplicative discovery.  As of the filing of this Opposition, L3Harris has not agreed to the proposed cross-use agreement.

> **D.      Judge Gilstrap Is Not Familiar With Huawei's Delaware Patents.**

Judge Gilstrap is not familiar with Huawei's Delaware patents because none of them has been asserted previously.  While four of Huawei's Delaware Patents relate to the LTE standard, as described above, these patents relate to different features and functionality than Huawei's Texas LTE patents as well as Huawei's prior assertions against non-parties in ED Texas.  Moreover, Huawei's prior litigations in Texas involving unrelated patents did not provide Judge Gilstrap familiarity with "Huawei's LTE Technology."  Importantly, the closed *Huawei v. T-Mobile* cases were referred to Magistrate Judge Payne who issued all substantive orders in those cases, which were later adopted by Judge Gilstrap.  Magistrate Judge Payne is not involved in the current Texas Litigations involving L3Harris.  And Judge Gilstrap recently appointed a

Technical Advisor to oversee claim construction proceedings in the Texas Litigations.

## V.    LEGAL STANDARD AND L3HARRIS'S BURDEN

Section 1404(a) permits transfer to a venue where the action "might have been brought" "for the convenience of the parties and witnesses, [and] in the interest of justice," 28 U.S.C. § 1404(a), so long as the defendant establishes "the balance of convenience of the parties is **strongly** in favor of [the] defendant." *Intuitive Surgical*, 2019 WL 2327659, at *2 (citing *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970)).[11]

When a defendant operates on an international scale, as does L3Harris, "transfer is often inappropriate," and a motion to transfer will be granted only where the defendant "prove[s] that litigating in Delaware would pose a unique or unusual burden on [its] operations." *Intellectual Ventures I LLC v. Altera Corp.*, 842 F. Supp. 2d 744, 751 (D. Del. 2012) (citations omitted).

As the movant, L3Harris has the burden "to establish that a balancing of proper interests weigh[s] in favor of transfer." *Intuitive Surgical*, 2019 WL 2327659, at *2 (citing *Shutte*, 431 F.2d at 25); *Altera*, 842 F. Supp. 2d at 750-51 (citations omitted). "[A] transfer is not to be liberally granted." *Shutte*, 431 F.2d at 25 (internal quotations omitted).

## VI.    ARGUMENT

L3Harris fails to show that venue and jurisdiction in ED Texas are proper. Moreover,

---

[11]    The Third Circuit in *Jumara* established a set of non-exhaustive public interest and private interest factors when considering transfer requests. The private interest factors include: "[1] plaintiff's forum preference as manifested in the original choice; [2] the defendant's preference; [3] whether the claim arose elsewhere; [4] the convenience of the parties as indicated by their relative physical and financial condition; [5] the convenience of the witnesses-but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and [6] the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873 879-80 (3d Cir. 1995) (internal citations omitted). The public interest factors include: "[1] the enforceability of the judgment; [2] practical considerations that could make the trial easy, expeditious, or inexpensive; [3] the relative administrative difficulty in the two fora resulting from court congestion; [4] the local interest in deciding local controversies at home; [5] the public policies of the fora; [6] and the familiarity of the trial judge with the applicable state law in diversity cases." *Id.*

even if venue and personal jurisdiction were proper, L3Harris does not overcome the high bar of showing that "the balance of convenience of the parties is ***strongly*** in favor of" L3Harris. *Intuitive Surgical*, 2019 WL 2327659, at *2. The Court should deny L3Harris's Motion.

### A.    L3Harris Has Not Shown that Huawei's Claims Could Have Been Brought in ED Texas.

L3Harris's Motion should be denied because it fails to show that venue and personal jurisdiction are proper in ED Texas. *Shutte,* 431 F.2d at 24 (internal citations omitted) (granting mandamus because venue and personal jurisdiction were not proper in the transferee court).

L3Harris does not even assert that ED Texas has jurisdiction over L3Harris. And L3Harris's only assertion that venue is proper in ED Texas is Huawei's Complaint in the Texas Litigation alleging proper venue based on L3Harris's first-filed complaint. Mot. 9. But in its Answer to the Texas Complaint, L3Harris denied allegations relating to venue and stated that it would not challenge venue "for purposes of this action only." Ex. 20 ¶ 11. An action can be transferred only to a district in which it "might have been brought." 28 U.S.C. § 1404(a). An action "might have been brought" in the transferee forum "only if the plaintiff had an 'unqualified right' to bring the action in the transferee forum at the time of the commencement of the action." *Shutte*, 431 F.2d at 24. A plaintiff does not have an unqualified right if there is a "real question" whether the action can be brought in the transferee forum at the time of the filing. *See id.* L3Harris's denial of venue allegations and express reservation to challenge venue in ED Texas shows that there was a "real question" whether this action could have been commenced in ED Texas, and thus there was no "unqualified right." L3Harris cannot now retroactively waive any challenges to venue or personal jurisdiction in order to convert ED Texas into a venue where ***this*** litigation could have been brought. *See GE Healthcare Bio-Sciences AB v. Bio-Rad Labs., Inc.*, No. 18-1899-CFC, 2019 WL 1985183, at *1-2 (D. Del. May 6, 2019) (citation omitted).

For this reason, L3Harris's Motion fails even to satisfy the threshold requirement for transfer.

      **B.**     **Transfer Would Create Complexities, Not Convenience.**

L3Harris does not carry its heavy burden in the "uphill climb" to override Huawei's preferred venue. *Altera*, 842 F. Supp. 2d at 756. L3Harris bases its argument primarily on an alleged overlap of patents in the Delaware and Texas Litigations, but significantly overstates the commonality between the cases, especially since L3Harris's arguments here contradict its Texas Motion to Sever, with which Judge Gilstrap agreed. In the present Motion, L3Harris argues that there is "direct" technology overlap since Huawei asserted LTE telecommunications patents in both cases. Mot. 1. This is wrong for multiple reasons. First, eleven of the nineteen patents between the two cases are non-LTE patents, and thus, L3Harris has failed to identify any overlap for the majority of patents. *See VLSI Tech. LLC v. Intel Corp.*, No. 18-966-CFC, 2018 WL 5342650, at *7-8 (D. Del. Oct. 29, 2018) (denying defendant's motion to transfer to a district with pending litigation between the parties, in part, because "Intel identifie[d] only six of the 13 patents-in-suits . . . as having the same subject matter . . . ."). Notably, Judge Gilstrap, recognizing this, stated that "[t]rying these technologically disparate patents in one case creates no efficiency gains." Ex. 16 at 4-5. L3Harris cannot plausibly now argue that litigating nineteen patents on two timelines would be efficient.

Second, L3Harris overgeneralizes the LTE patents because they involve different features in the LTE standard, including different LTE documents addressing those different features. *See* n.8. L3Harris's allegations that the cases both relate to "LTE technology" is like saying a case about auto emissions technology and a case about rearview mirror technology are related because they both concern cars. "While the patents may relate to the same technological field, they nonetheless involve different patents, claims, inventors, prosecution histories and a different set of alleged infringing activities," and, thus, do not support transfer. *Praxair, Inc. v. ATMI,*

*Inc.*, No. 03-1158-SLR, 2004 WL 883395, at *2 (D. Del. Apr. 20, 2004); *see also Mallinckrodt Inc. v. E-Z-Em Inc.*, 670 F. Supp. 2d 349, 358 (D. Del. 2009) (denying transfer where "the extent to which the cases involve a common field of prior art and/or similar technologies is unclear"); *VLSI Tech.*, 2018 WL 5342650, at *8.  Importantly here, because of the differences in technology covered by the patents, the risk of inconsistent rulings is very low.

Third, contrary to L3Harris's arguments, even if patents in both the Delaware and Texas litigations are subject to FRAND obligations, the resolution of FRAND issues are highly patent-specific because the focus in FRAND cases is on apportioning the value of the patent from the standard.  *See Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1233 (Fed. Cir. 2014) ("We . . . hold that the royalty for SEPs should reflect the approximate value of that technological contribution, not the value of its widespread adoption due to standardization.").

Indeed, the Delaware and Texas Litigations here are like those at issue in *VLSI Technology*, where Judge Connolly denied defendant's motion to transfer when the parties were engaged in a separate suit in the Northern District of California.  2018 WL 5342650.  The *VLSI* court denied the motion because defendant "Intel ha[d] overstated the degree to which" the two actions overlapped since "none of the California patents share[d] inventors, claims, disputed claim terms, patent families, prosecution histories, or specifications," "only six of the 13 patents-in-suit . . . ha[d] the same subject matter" (here, L3Harris only identifies at most eight out of the nineteen patents that are directed to the LTE standard), and defendant "Intel's previous assertions . . . in the Northern District of California about the California action and California patents effectively negate[d] its assertions before [the Court] that the Delaware and California patents substantially overlap."  *Id.* at *8.  Judge Connolly's reasoning applies equally here.

L3Harris's cases are inapposite.[12]  In *Good Tech. v. MobileIron, Inc.*, the principal places of business of both parties and location where the defendant designed and developed the accused products were in the transferee district; and the patents in both litigations "belong[ed] to the same patent family," had a common parent, had "similar prosecution histories and specifications," and listed "the same inventor."  No. 14-1308-LPS-CJB, 2015 WL 1458091, at *1, 4, 7-8 (D. Del. Mar. 27, 2015).  Here, neither party has a principal place of business in ED Texas, the accused products were not developed in ED Texas, and none of Huawei's patents across the two litigations has a common parent, similar file histories, or overlapping inventors.

Similarly, *Cashedge* is inapposite because "the technologies at issue [in *Cashedge*] all relate[d] to data extraction, retrieval, or presentation through Internet technologies" and the defendant presented evidence that the transferee district was more convenient, largely due to the defendant's headquarters located in that transferee district.  *Cashedge, Inc. v. Yodlee, Inc.*, No. 06-170 JJF, 2006 WL 2038504, at *1-2 (D. Del. July 19, 2006).  Again, these facts do not apply to L3Harris or Huawei, or the collective nineteen asserted patents here.

### C.    The Private Factors Weigh Against Transfer.

#### 1.    Huawei's Forum Preference Strongly Weighs Against Transfer.

Huawei's preferred forum weighs strongly against transfer.  "It is black letter law that a plaintiff's choice of a proper forum is a ***paramount consideration*** in any determination of a transfer request[] – one that should not be lightly disturbed."  *Intuitive Surgical*, 2019 WL 2327659, at *2 (citing *Shutte*, 431 F.2d at 25) (internal quotations omitted).  "A plaintiff, as the injured party, generally ha[s] been 'accorded [the] privilege of bringing an action where he

---

[12] L3Harris also cites *Human Genome Sciences, Inc. v. Genentech, Inc.* at n.46, but ignores that the judge in the transferee district had "an extensive nine-year long experience with the" asserted patent, including "presid[ing] over four litigations centered around the [asserted] patent, two of which are still pending."  These facts are not present here.  No. 11-082-LPS, 2011 WL 2911797, at *10 (D. Del. July 18, 2011).

chooses.'" *Id.* at *1.

Huawei's reasons for filing in Delaware are rational and legitimate, and thus weigh against transfer.  *See Pragmatus AV, LLC v. Yahoo! Inc.*, No. 11-902-LPS-CJB, 2012 WL 4889438, at *4-6 (D. Del. Oct. 15, 2015). This District has extensive experience adjudicating complex patent litigation matters, the venue is conveniently near an international airport that can accommodate all likely witnesses, and L3Harris is incorporated in Delaware so it has availed itself of the privileges and burdens of Delaware.  *See, e.g.*, *Altera*, 842 F. Supp. 2d at 754.

L3Harris's reliance on *Piper Aircraft Co. v. Reyno* (Mot. 15-16) is misplaced, since that case applies to "common-law *forum non conveniens*," not motions to transfer under § 1404(a).[13] *GE Healthcare*, 2019 WL 1985183, at *4.[14]  Indeed, *Piper* refused to apply a § 1404(a) case— *Van Dusen v. Barrack*—because "§ 1404(a) transfers are different than dismissals on the ground of *forum non conveniens*."  454 U.S. 235, 253 (1981).  Second, contrary to L3Harris's assertion (Mot. 16-17), *Link_A_Media* did not create a "less deference" standard in a patent case involving a foreign plaintiff.  Rather, the Federal Circuit in *Link_A_Media* faulted the district court for failing to consider two factors in the Third Circuit's *Jumara* inquiry, and for concluding that defendant's state of incorporation is "***dispositive*** of the public interest analysis."  *In re Link_A_Media*, 662 F.3d 1221, 1223-24 (Fed. Cir. 2011).  The Federal Circuit reversed, citing the location of defendant's headquarters in the transferee district and the location of named

---

[13] L3Harris also cites *Lony v. EI Du Pont De Nemours & Co.*, 886 F.2d 628, 633-34 (3d Cir. 1989) (Mot. 15, n.67), but *Lony* also was addressing the issue of *forum non conveniens*, and not transfer under Section 1404(a).

[14] As the *GE Healthcare* court noted, "[u]nlike § 1404(a), [t]he common-law doctrine of *forum non conveniens* has continuing application [in federal courts] only in cases **where the alternative forum is abroad**, and perhaps in rare instances where a state or territorial court serves litigational convenience best."  2019 WL 1985183, at *4.  Further, *forum non conveniens* "is designed in part to help courts avoid conducting complex exercises in comparative law and thus enables a district court to dismiss the case where it would be otherwise required to untangle problems in conflict of laws, and in law foreign to itself."  *Id.* (internal quotations omitted).

inventors in California—inapposite facts here.  *Id.* at 1222-24.[15]

### 2.   L3Harris's Choice of Forum Deserves Minimal Weight.

L3Harris's preference to transfer weighs minimally in favor of transfer.  "Under Third

Circuit law, Defendants' preference for an alternative forum is not given the same weight as

Plaintiff's preference."  *Altera*, 842 F. Supp. 2d at 755.

### 3.   The Claim Did Not Arise in ED Texas.

Because L3Harris does not show that the claim arose in ED Texas, the third private

interest factor does not favor transfer.  "[P]atent claims arise wherever alleged infringement has

occurred." *Intuitive Surgical,* 2019 WL 2327659, at *2.  "[T]his Court typically focuses on the

location of the production, design and manufacture of the accused instrumentalities."  *Tessera,*

*Inc. v. Broadcom Corp.*, No. 16-379-LPS-CJB, 2017 WL 1065865, at *5 (D. Del. Mar. 21,

2017).  L3Harris does not assert that it develops, designs, or manufactures the accused products

in ED Texas.  And because Huawei has accused L3Harris of patent infringement in Delaware

(D.I. ¶¶ 39, 53, 67, 80, 91), it could be said that Huawei's claims arose in Delaware.  *Wiremed*

*Tech. LLC v. Adobe Inc.*, No. 18-1066 (MN), 2019 WL 2250643, at *3 (D. Del. May 24, 2019).

The fact that Huawei entities that are not parties to the Delaware Litigation (Mot. 19-20)

are located in Texas is irrelevant.  Huawei is unaware of any case where a court in this District

has held that another venue-based entity related to a plaintiff in a Delaware action could be the

basis for an infringement claim arising in that other venue.

### 4.   The Parties' Relative Physical and Financial Condition Weigh Against Transfer.

---

[15] Courts in this District have consistently limited *Link_A_Media* to cases involving very different facts to this case.  *See, e.g.*, *VLSI Tech.*, 2018 WL 5342650, at *5 ("I . . . find it difficult to understand why the plaintiff's forum choice in and of itself merits less weight when the plaintiff has no ties to the selected forum or when the facts underlying the controversy occurred elsewhere. . . . I do not believe that. . . *In re Link_A_Media* . . . compels a different conclusion.").

The convenience of the parties as indicated by their relative physical and financial position, does not favor transfer.  The Court considers: "(1) the parties' physical location; (2) the associated logistical and operational costs to the parties in traveling to Delaware – as opposed to the proposed transferee district – for litigation purposes; and (3) the relative ability of each party to bear these costs in light of its size and financial wherewithal."  *Intuitive Surgical*, 2019 WL 2327659, at *3.  Because L3Harris is a Delaware corporation, "absent some showing of a unique or unexpected burden, [L3Harris] should not be successful in arguing that litigation in [Delaware] is inconvenient."  *ADE Corp. v. KLA-Tencor Corp.*, 138 F. Supp. 2d 565, 572 (D. Del. Apr. 10, 2001); *Altera Corp.*, 842 F. Supp. 2d at 756.  L3Harris has not met this burden.

L3Harris concedes that its "headquarters and principal place of business are in Melbourne, Florida" (Evander Decl. ¶ 6), and Huawei is a foreign corporation with a place of business in China.  D.I. 1, ¶ 3.  Moreover, L3Harris does not identify a single employee related to this case who is employed in ED Texas.  Thus, neither party has a principal place of business in ED Texas, and any corporate witnesses will have to travel either to Delaware or ED Texas.

Comparing the "logistical and operational costs to the parties' employees in traveling" to each forum, L3Harris does not and cannot claim either party's employees—many of whom are located internationally—will be less inconvenienced traveling to ED Texas than Delaware.  As another court in this District has recognized, "witnesses located in other parts of the country would probably find travel to Delaware more convenient than travel to Marshall, Texas, since Marshall is three hours from a major airport whereas Wilmington is only thirty minutes from a major airport."  *Microsoft Corp. v. Geotag Inc.*, 847 F. Supp. 2d 675, 678 (D. Del. 2012).  In addition, trial counsel are based in New York and California, and while Wilmington is a short train ride from New York, Marshall is a multi-hour flight from both New York and California.

-15-

In order to bolster its position, L3Harris misstates (Mot. 19) Judge Gilstrap's consolidation order, omitting the emphasized text: "the Court encourages the parties to file a notice with the Court in the event that there are other related cases ***currently pending on the Court's docket*** that may also be appropriate for consolidation with this case."  Ex. 17 at 2. Nowhere does Judge Gilstrap suggest that transfer of new cases *to* ED Texas is encouraged or that such cases would be consolidated.

### 5.     The Convenience of the Witnesses Does Not Support Transfer.

The fifth private factor, the convenience of witnesses, does not support transfer.  This factor is relevant "only to the extent that the witnesses may actually be unavailable for trial in one of the fora."  *Jumara*, 55 F.3d at 879.  "[F]or this factor to meaningfully favor the movant, the movant must come forward with some amount of specificity," including: "(1) the ***particular witness*** to whom the movant is referring; (2) what that person's testimony might have to do with a trial in this case; and (3) what reason there is to think that the ***person will 'actually' be unavailable for trial*** (as opposed to the proffer of a guess or speculation on that front)."  *Varian Med. Sys., Inc. v. Elekta AB*, No. 15-871-LPS-CJB, 2016 WL 3341865, at *7 (D. Del. June 8, 2016); *see also McRo, Inc. v. Activision Blizzard, Inc.,* No. 12-1508-LPS-CJB, 2013 WL 6571618, at *9 (D. Del. Dec. 13, 2013).

L3Harris does not identify a single "particular witness" who would be unavailable, much less provide any relevant testimony or justification for why any such witness may be unavailable. For example, L3Harris identifies two prosecution counsel for two Huawei Delaware patents and potential, unidentified, Nokia and Cisco employees who *might* reside in Texas.  Mot. 17.  But L3Harris does not show "whether any of these [witnesses] would actually be necessary witnesses or whether they would agree to appear at trial."  *Virentem Ventures, LLC v. Youtube, LLC*, No. 18-917 (MN), 2019 WL 2131877, at *4 (D. Del. May 16, 2019); *ADE*, 138 F. Supp. 2d at 570-71

("Rather than starting with a presumption that witnesses may not appear and concluding the case should be transferred based on that assumption, it may make more sense to look at the facts and circumstances of each witness to see whether a subpoena is necessary."); *GE Healthcare*, 2019 WL 1985183, at *6. L3Harris's identification of three inventors of the '969 Delaware patent who purportedly reside in California (Mot. 18)—outside subpoena power of ED Texas and Delaware—also does not provide a basis for why ED Texas would be a more convenient forum.

### 6.      The Location of Books and Records Does Not Support Transfer.

The sixth private factor, the location of books and records, does not support transfer. This factor is commonly given little weight, as technological advances have "shortened the time it takes to transfer information, reduced the bulk or size of documents or things on which information is recorded, . . . and have lowered the cost of moving that information from one place to another." *Cypress Semiconductor Corp. v. Integrated Circuit Sys., Inc.*, No. 01-199-SLR, 2001 WL 1617186, at *3 (D. Del. Nov. 28, 2001) (internal quotations and citation omitted); *Cellectis S.A. v. Precision Biosci., Inc.*, 858 F. Supp. 2d 376, 382 (D. Del. 2012); *ADE Corp.*, 138 F. Supp. 2d at 571.

L3Harris has not identified any records or documents that cannot be produced as easily in Delaware as ED Texas.[16] L3Harris's documents and records are either stored or accessible using electronic means at L3Harris's headquarters in Melbourne, Florida, and the burden of producing its documents will be equal regardless of which venue handles this case.

### D.      The Public Factors Weigh Against Transfer.[17]

#### 1.      Practical Considerations Would Not Make Trial Easier, More Expeditious, or Less Expensive in ED Texas.

---

[16] L3Harris's references to third parties that may have documents does not help L3Harris, since those documents, too, would be produced electronically.

[17] The parties do not dispute that the enforceability of the judgment and applicable state law in diversity cases are neutral and inapplicable to this case, respectively.  Mot. 12, n.57.

This factor weighs strongly against transfer, because transferring these eight Delaware Patents to ED Texas will further complicate an already complex dispute, creating a case with nineteen patents directed to multiple distinct technologies. Indeed, as L3Harris acknowledges, the Huawei Texas patents and L3Harris Texas patents already involve disparate technology. Mot. 3. Moreover, since the Texas Litigation is already at claim construction, if transferred, the Delaware Patents will likely proceed on a slower timeline, negating any advantage to transfer.

L3Harris incorrectly asserts that Judge Gilstrap "has substantial experience with Huawei's LTE technology" due to his involvement in the pending Texas Litigations and in closed litigations involving parties not at issue in this case. Mot. 5, 8, 13. As explained above, Huawei's LTE patents in Delaware are directed to a different technology area than its LTE patents currently in the Texas Litigations (and those asserted previously). None of Huawei's Delaware LTE Patents have ever been in front of Judge Gilstrap.

The remaining eleven non-LTE patents in the Texas and Delaware Litigations cover a variety of distinct technologies, with L3Harris itself arguing that the non-LTE Texas patents alone cover disparate technology. Ex. 16 at 4-5. In similar circumstances, the court in *VLSI* found that a transfer would not "result in an easier, less expensive, single trial." 2018 WL 5342650, at *7-8. For the same reasons, the Court should find that this factor does not favor transfer here.

Finally, L3Harris's assertion that duplicative discovery would be needed if the case is not transferred (Mot. 5) falls flat. Huawei has proposed that the parties enter a cross-use agreement to avoid duplicative discovery, but L3Harris has neither agreed nor responded to Huawei's proposal. L3Harris's apparent rejection of this proposal confirms that L3Harris's true intent is not to minimize inconvenience, but instead to win this Motion so that it can improperly assert

-18-

the '572 patent against new products in the Texas Litigations.

**2.      Relative Administrative Difficulty in the Fora Does Not Support Transfer.**

Both ED Texas and Delaware have the requisite experience and procedures to adjudicate this matter in a timely and non-prejudicial manner, and ED Texas is at least as congested as the District of Delaware.  For example, Delaware and ED Texas have 637 and 633 pending cases per judgeship, respectively.[18]  *See Intuitive Surgical*, 2019 WL 2327659, at *5 (assessment based on cases pending per judgeship).  In addition, for the same period, the median time to disposition for civil cases was 5.4 months and 8.6 months in Delaware and ED Texas, respectively.[19]  And contrary to L3Harris's assertion, both Delaware and ED Texas have seen a recent increase in new filings in the last year over the previous year.[20]

Importantly, as L3Harris admits, claim construction is already underway in the Texas Litigations (Mot. 14), making it impossible for the Delaware Litigation to catch up.  Thus, if L3Harris's Motion is granted, it will either delay the pending Texas Litigations or substantially lag behind them, rendering L3Harris's efficiency arguments meaningless.

**3.      Local Interests in Deciding Local Controversies Do Not Favor Transfer.**

No local interests in deciding the controversy support transfer.  First, this is a patent case, and thus "do[es] not give rise to a local controversy or implicate local interests." *Intuitive Surgical*, 2019 WL 2327659, at *11 (citations omitted).  Second, neither party is incorporated in ED Texas or has substantial facilities in that District.  *Wiremed Tech.*, 2019 WL 2250643, at *10 (citing *Rosebud LMS, Inc. v. Salesforce.com, Inc.*, No. 17-1712 (CFC), 2018 WL 6061343, at *7

---

[18] June 30, 2019 statistics for District Courts of the United States, available at: https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0630.2019.pdf.
[19] *Id.*
[20] *Id.* (comparing filings in the period ending June 30, 2019 to the period ending June 30, 2018).

(D. Del. Nov. 20, 2018)).  Third, Huawei does not have local connections to ED Texas (the

Texas Huawei entities L3Harris identifies have no connection to the Delaware Litigation).

Fourth, third parties Nokia and Cisco have no connection to the resolution of the Delaware

Litigation, and their presence in Texas has no relevance to this "controversy"—at most, Nokia

and Cisco will be relevant in discovery.  Because the case would not have an "outsized

resonance to the citizens of [ED Texas], []or that its outcome would significantly impact that

district," this factor does not support transfer.  *Tessera*, 2017 WL 1065865, at *11.

### 4.    The Public Policies of the Fora Factor Does Not Support Transfer.

The public policies of the fora do not weigh in favor of transfer.  L3Harris again relies on

the alleged efficiencies to be gained by having Judge Gilstrap hear both the Delaware and Texas

Litigations (Mot. 13) to argue that the cases are related.  But as explained above, the two cases

are very distinct, and no judicial efficiencies would be gained by combining the cases.[21]

## VII.    CONCLUSION

L3Harris has not met its high burden to demonstrate that the balance of factors weighs

"***strongly*** in favor of" transfer, sufficient to overcome Huawei's "***paramount consideration***" of

choosing to litigate in Delaware. The Court should deny L3Harris's Motion.

---

[21] Given L3Harris's incorporation in Delaware, this factor is neutral at best. *NST Global, LLC v. Sig Sauer, Inc.*, No. 19-121-CFC, 2019 WL 2994696, at *3 (D. Del. July 9, 2019).

| Dated: September 3, 2019 | |
|---|---|
| | YOUNG CONAWAY STARGATT & TAYLOR, LLP |

Of Counsel:

Kevin J. Post
Alexander E. Middleton
ROPES & GRAY LLP
1211 Avenue of the Americas
New York, NY 10036-8704
(212) 596-9000
kevin.post@ropesgray.com
alexander.middleton@ropesgray.com

James R. Batchelder
ROPES & GRAY LLP
1900 University Avenue, 6th Floor
East Palo Alto, CA 94303-2284
(650) 617-4000
james.batchelder@ropesgray.com

 /s/  *Anne Shea Gaza*
Adam W. Poff (No. 3990)
Anne Shea Gaza (No. 4093)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE  19801
(302) 571-6600
apoff@ycst.com
agaza@ycst.com
swilson@ycst.com

*Attorneys for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I, Anne Shea Gaza, hereby certify that on September 3, 2019, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> David M. Fry, Esquire
> Shaw Keller LLP
> I.M. Pei Building
> 1105 North Market Street, 12th Floor
> Wilmington, DE 19801
> *dfry@shawkeller.com*
>
> *Attorneys for Defendant*

I further certify that on September 3, 2019**,** I caused the foregoing document to be served via electronic mail upon the above-listed counsel and on the following:

> Corey Johanningmeier, Esquire
> Bunsow De Mory LLP
> 701 El Camino Real
> Redwood City, CA  94063
> *cjohanningmeier@bdiplaw.com*
>
> *Attorney for Defendant*

01:24990347.1

Dated:  September 3, 2019

YOUNG CONAWAY STARGATT &
 TAYLOR, LLP

*/s/  Anne Shea Gaza*
Adam W. Poff (No. 3990)
Anne Shea Gaza (No. 4093)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 N. King Street
Wilmington, Delaware 19801
302-571-6600
*apoff@ycst.com*
*agaza@ycst.com*
*swilson@ycst.com*

*Attorneys for Plaintiff*

2