## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

HUAWEI TECHNOLOGIES CO., LTD.,

                Plaintiff,

      v.

L3HARRIS TECHNOLOGIES, INC.,

                Defendant.

C.A. No. 19-1306-MN

## PLAINTIFF HUAWEI TECHNOLOGIES CO., LTD.'S OPENING BRIEF IN SUPPORT OF ITS MOTION TO DISMISS COUNTS SIX TO TEN AND SEVENTEEN TO TWENTY OF DEFENDANT'S COUNTERCLAIMS UNDER FED. R. CIV. P. 12(B)(6)

Of Counsel:

Kevin J. Post
Alexander E. Middleton
ROPES & GRAY LLP
1211 Avenue of the Americas
New York, NY 10036-8704
(212) 596-9000
kevin.post@ropesgray.com
alexander.middleton@ropesgray.com

James R. Batchelder
ROPES & GRAY LLP
1900 University Avenue, 6th Floor
East Palo Alto, CA 94303-2284
(650) 617-4000
james.batchelder@ropesgray.com

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Adam W. Poff (No. 3990)
Anne Shea Gaza (No. 4093)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
apoff@ycst.com
agaza@ycst.com
swilson@ycst.com

*Attorneys for Plaintiff*

Dated: September 24, 2019

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION AND SUMMARY OF ARGUMENTS .................................................. 1

II. NATURE AND STAGE OF THE PROCEEDINGS ...................................................... 3

III. STATEMENT OF THE FACTS: BACKGROUND OF THE L3HARRIS ASSERTED PATENTS .......................................................................................... 4

    A. The '572 Patent and its Representative Claim ......................................... 4

    B. The '117 and '161 Patents and Their Representative Claims ............................ 5

IV. LEGAL STANDARD ............................................................................................ 7

V. ARGUMENT ...................................................................................................... 9

    A. L3Harris's Florida State Law Counterclaim Should Be Dismissed ..................... 9

        1. L3Harris's Florida Unfair Competition Counterclaim Is Deficient On The Merits ............................................................................. 9

        2. L3Harris's Florida Unfair Competition Counterclaim Is Preempted By Federal Law, And Thus Should Be Dismissed ................................... 10

    B. L3Harris's Patent Infringement Counterclaims Should Be Dismissed For Failure To State A Claim Under 35 U.S.C. § 101 .............................................. 12

        1. The Claims Of The L3Harris Asserted Patents Are Directed To An Abstract Idea .............................................................................. 12

            a. The '572 Cryptography Patent ......................................... 12

            b. The '117 and '161 Network Intrusion Detection Patents ............. 14

        2. The Claims Of The L3Harris Asserted Patents Lack Inventive Concept ..................................................................................... 16

            a. The '572 Patent ......................................................... 17

            b. The '117 and '161 Patents ............................................ 18

    C. L3Harris's Invalidity Counterclaims Should Be Dismissed Because They Fail To Allege Facts Sufficient To Meet The Pleading Standards ....................... 19

VI. CONCLUSION ................................................................................................ 20

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Affinity Labs of Texas, LLC v. DirecTV, LLC*,
  838 F.3d 1253 (Fed. Cir. 2016)..........................................................................................2

*Alcon Labs., Inc. v. Allied Vision Grp., Inc.*,
  No. 18-cv-61638, 2019 WL 2245584 (S.D. Fla. Mar. 7, 2019) No. 18-cv-
  61638, *report and recommendation adopted.*, No. 18-cv-61638, 2019 WL
  2245262 (S.D. Fla. Apr. 2, 2019) .....................................................................................11

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
  573 U.S. 208 (2014)......................................................................................12, 16, 17, 18

*Apotex, Inc. v. Senju Pharm. Co.*,
  No. 12-196-SLR, 2015 WL 1968493 (D. Del. May 1, 2015)...................................................7

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...............................................................................................3, 19, 20

*Baker v. Baptist Hosp., Inc.*,
  115 So. 3d 1123 (Fla. Dist. Ct. App. 2013) ......................................................................10

*Bancorp Servs. L.L.C. v. Sun Life Assurance Co. of Canada*,
  687 F.3d 1266 (Fed. Cir. 2012)...........................................................................................8

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)...............................................................................................3, 19, 20

*Bilski v. Kappos*,
  561 U.S. 593 (2010)............................................................................................................8

*Blue Spike, LLC v. Google Inc.*,
  No. 14-cv-01650-YGR, 2015 WL 5260506 (N.D. Cal. Sept. 8, 2015), *aff'd*,
  669 F. App'x 575 (Fed. Cir. 2016) ....................................................................................17

*Boat Owners Ass'n of U.S. v. Flagship Towing LLC*,
  No. 2:15-cv-197-FTM-29CM, 2015 WL 4548698 (M.D. Fla. July 28, 2015)...................9, 10

*British Telecomms. PLC v. IAC/InterActiveCorp*,
  381 F. Supp. 3d 293 (D. Del. 2019).................................................................................16

*Cleveland Clinic Found. v. True Health Diagnostics LLC*,
  859 F.3d 1352 (Fed. Cir. 2017), *cert. denied*, 138 S. Ct. 2621 (2018).....................................8

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n,*
 776 F.3d 1343 (Fed. Cir. 2014)......................................................................6, 8, 16

*Cornell Univ. v. Illumina,*
 No. 10-433-LPMPT, 2012 WL 1885129 (D. Del. May 23, 2012) .............................7

*Credit Acceptance Corp. v. Westlake Servs.,*
 859 F.3d 1044 (Fed. Cir. 2017)............................................................................16

*CyberSource Corp. v. Retail Decisions, Inc.,*
 654 F.3d 1366 (Fed. Cir. 2011)......................................................................12, 15

*DDR Holdings, LLC v. Hotels.com, L.P.,*
 773 F.3d 1245 (Fed. Cir. 2014)............................................................................16

*Electric Power Group, LLC v. Alstom S.A.,*
 830 F.3d 1350 (Fed. Cir. 2016).................................................................... *passim*

*EMC Corp. v. Zerto, Inc.,*
 No. 12-956-GMS, 2014 WL 3809365 (D. Del. July 31, 2014) .................................7

*FairWarning IP, LLC v. Iatric Systems, Inc.;*
 839 F.3d 1089, 1094 (Fed. Cir. 2016)..................................................2, 3, 14, 15

*Idenix Pharm., Inc. v. Gilead Scis., Inc.,*
 No. 13-1987-LPS, 2014 WL 4222902 (D. Del. Aug. 25, 2014)..............................20

*Intellectual Ventures I LLC v. Erie Indemnity Co.,*
 850 F.3d 1315 (Fed. Cir. 2017).......................................................................2, 15, 17

*Intellectual Ventures I LLC v. Symantec Corp.,*
 838 F.3d 1307 (Fed. Cir. 2016)............................................................................12

*Internet Media Corp. v. Hearst Newspapers, LLC,*
 No. 10-690-SLR, 2012 WL 3867165 (D. Del. Sept. 6, 2012) .................................19

*Maxon, LLC v. Funai Corp.,*
 726 F. App'x 797 (Fed. Cir. 2018) .......................................................................17

*Morgan v. Scott,*
 83 F. Supp. 3d 616 (D. Del. 2015)..........................................................................7

*Mortg. Grader, Inc. v. First Choice Loan Servs. Inc.,*
 811 F.3d 1314 (Fed. Cir. 2016)............................................................................18

*Personalized Media Commc'ns, LLC v. Amazon.com, Inc.,*
 161 F. Supp. 3d 325 (D. Del. 2015), *aff'd,* 671 F. App'x 777 (Fed. Cir. 2016)...............13, 14

*Quality Edge, Inc. v. Rollex Corp.*,
    709 F. App'x 1000 (Fed. Cir. 2017) ................................................................................19

*RecogniCorp, LLC v. Nintendo Co., Ltd.*,
    855 F.3d 1322 (Fed. Cir. 2017) ......................................................................2, 12, 13

*Return Mail, Inc. v. USPS*,
    868 F.3d 1350 (Fed. Cir. 2017) ......................................................................................13

*Sandbox Software, LLC v. 18Birdies, LLC*,
    No. 18-1649 (MN), 2019 WL 2524780 (D. Del. June 19, 2019) ...............................8

*SAP Am., Inc. v. InvestPic, LLC*,
    898 F.3d 1161 (Fed. Cir. 2018) ................................................................................13, 15

*Secured Mail Solutions LLC v. Universal Wilde, Inc.*,
    873 F.3d 905 (2017) ........................................................................................................13

*Semiconductor Energy Lab. Co. v. Samsung Elecs. Co.*,
    204 F.3d 1368 (Fed. Cir. 2000) ......................................................................1, 10, 11

*Senju Pharm. Co. v. Apotex, Inc.*,
    921 F. Supp. 2d 297 (D. Del. 2013) ..............................................................................19

*Ultramercial, Inc. v. Hulu, LLC*,
    772 F.3d 709 (Fed. Cir. 2014) ..........................................................................................8

**Statutes**

35 U.S.C. § 101 ............................................................................................................ *passim*

Fla. Stat. § 501, *et seq.* ............................................................................................ *passim*

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) ....................................................................................................1, 7

I.      **INTRODUCTION AND SUMMARY OF ARGUMENTS**

Huawei Technologies Co., Ltd. ("Huawei") hereby moves pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss L3Harris Technologies, Inc.'s ("L3Harris") Florida unfair competition counterclaim (Count Seventeen), patent infringement counterclaims (Counts Eighteen, Nineteen, and Twenty), and invalidity counterclaims (Counts Six, Seven, Eight, Nine, and Ten) (D.I. 8).

The Court should dismiss L3Harris's Florida unfair competition counterclaim for two independent reasons:  (1) it fails to allege facts sufficient to plead a violation of Florida unfair competition law, and (2) it is preempted by federal law.  L3Harris fails to allege facts sufficient to support its counterclaim under Florida's Deceptive and Unfair Trade Practices Act (the "FDUTPA") because L3Harris's allegations are not properly based on protected "trade or commerce," as defined by the FDUTPA.  The Court should thus dismiss this counterclaim.

In addition, the Court should dismiss L3Harris's Florida state law counterclaim because it is preempted by federal law.  Count Seventeen is nothing more than a re-pleading of L3Harris's unenforceability defense (Fifteenth Affirmative Defense).  L3Harris's state law unfair competition counterclaim is predicated on the same acts giving rise to its unenforceability defense based on federal patent law.  As the Federal Circuit has held, a state law cause of action predicated on the same facts as a Federal law defense would be "contrary to Congress' preemptive regulation in the area of patent law."  *See, e.g.*, *Semiconductor Energy Lab. Co. v. Samsung Elecs. Co.*, 204 F.3d 1368, 1382 (Fed. Cir. 2000), *amended* (Apr. 5, 2000) (quoting *Abbott Labs. v. Brennan*, 952 F.2d 1346, 1357 (Fed. Cir. 1991)).  For this independent reason, the Court should dismiss L3Harris's Florida unfair competition counterclaim.

With respect to Counts Eighteen, Nineteen, and Twenty, L3Harris has asserted three patents, U.S. Patent Nos. 7,440,572 ("the '572 Patent", Ex. A), 7,082,117 ("the '117 Patent", Ex.

B), and 6,986,161 ("the '161 Patent", Ex. C) (collectively, "the L3Harris Asserted Patents"),

each of which claims patent-ineligible subject matter under 35 U.S.C. § 101.  For each patent,

L3Harris asserts one claim that is representative of the others in that patent for purposes of this

motion.  Each of the Challenged Claims[1] is analogous to claims the Federal Circuit has

determined are abstract in controlling cases, and none recites anything inventive—such as new

components, or a technological improvement to the functioning of recited conventional

components—that might transform the claim into otherwise patent-eligible subject matter.

The claims of the '572 Patent are directed to the abstract idea of encoding and decoding

data (encrypting and decrypting address and data information) used in a network.  The Federal

Circuit has routinely found such claims impermissibly abstract.  *See, e.g.*, *RecogniCorp, LLC v.*

*Nintendo Co., Ltd.*, 855 F.3d 1322, 1328 (Fed. Cir. 2017) (invalidating claims "directed to

encoding and decoding image data, an abstract idea").  Far from reciting an "inventive concept,"

the '572 Patent claims require only conventional, generic components performing their

conventional functions—a transceiver and medium access controller for transmitting data, and a

cryptography circuit for encrypting and decrypting data.  *See Affinity Labs of Texas, LLC v.*

*DirecTV, LLC*, 838 F.3d 1253, 1261 (Fed. Cir. 2016) (invalidating claims where "the

components were conventional and were used in conventional ways"); *Intellectual Ventures I*

*LLC v. Erie Indemnity Co.*, 850 F.3d 1315, 1328-29 (Fed. Cir. 2017) ("*Intellectual Ventures 1*")

(sending and receiving information using computers is routine and generic).

The nearly identical '117 and '161 Patents are directed to the impermissibly abstract idea

of monitoring communications to detect suspicious behavior and generating an alert.  These

patents' claims are indistinguishable from, and indeed broader than, the claims found to be

---

[1] "Challenged Claims" refers to all claims of the L3Harris Asserted Patents.

patent-ineligible in *FairWarning IP, LLC v. Iatric Systems, Inc.*, which were "directed to collecting and analyzing information to detect misuse and notifying a user when misuse is detected."  839 F.3d 1089, 1094 (Fed. Cir. 2016) (citing *Electric Power Group, LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016)).  Here, the claims recite the same steps as in *FairWarning*, namely "detecting" improper access/misuse in a computer environment by "monitoring" transmissions and generating a notification or alert upon detection.  The claims do not contain any inventive concept, as they recite merely conventional computer components for performing their conventional functions.  Moreover, the claims do not address problems specifically arising in the realm of computer networks—detection of intruders is not limited or specific to computer networks—and the claims do not "override" the routine and conventional use of the claimed generic computing components.

Finally, L3Harris's invalidity counterclaims fail to meet the pleading standards under *Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007) and *Ashcroft v. Iqbal,* 556 U.S. 662 (2009).

## II.     NATURE AND STAGE OF THE PROCEEDINGS

On July 12, 2019, Huawei filed the present action against L3Harris, asserting that L3Harris infringes five patents, U.S. Patent Nos. 7,439,969 ("the '969 Patent"), 9,072,011 ("the '2011 Patent"), 9,655,011 ("the '5011 Patent"), 8,270,371 ("the '371 Patent"), and 9,215,624 ("the '624 Patent") (collectively, "the Huawei Asserted Patents").  D.I. 1.  L3Harris filed its Answer and Counterclaim on August 19, 2019, alleging infringement of the three L3Harris Asserted Patents, declaratory judgment of invalidity of the five Huawei Asserted Patents, and that Huawei violated Florida state unfair competition law by filing its action in Delaware. D.I. 8.

III.    **STATEMENT OF THE FACTS: BACKGROUND OF THE L3HARRIS ASSERTED PATENTS**

A.    **The '572 Patent and its Representative Claim**

The '572 Patent is directed to providing security in a wireless local area network (LAN). '572 at 1:5-8; 1:64-67.  The specification acknowledges that wireless LANs were well-known, *e.g.*, as described in the IEEE 802.11 standard, and that security was addressed in the 802.11 standard via WEP encryption.  *See id.* at 1:10-55.  But WEP "only protects the data packet information and does not protect the physical layer header," which the '572 Patent contends provides "a reduced level of security."  *Id.* at 1:51-55.  The '572 Patent purports to address that shortcoming by using a cryptography circuit to encrypt and decrypt address information in addition to data information.

As reflected in both the claims and the specification, the '572 Patent does not purport to disclose or claim a new or unconventional cryptography circuit or algorithm for encrypting/decrypting address information, let alone any other unconventional components.  For example, representative claim 1 recites:

> 1. A secure wireless local area network (LAN) device comprising:
>
> a housing;
>
> a wireless transceiver carried by said housing;
>
> a medium access controller (MAC) carried by said housing; and
>
> a cryptography circuit carried by said housing and connected to said MAC and said wireless transceiver for encrypting both address and data information for transmission by at least adding a plurality of encrypting bits to both the address and the data information, and for decrypting both the address and the data information upon reception.

The specification describes the cryptography circuit in functional terms, as one that implements a generic cryptography algorithm using a generic cryptographic key, *id.* at 4:20-28, and acknowledges that existing cryptographic circuits may be used, *id.* at 5:54-60.  The specification also admits that adding a plurality of encrypting bits is a technique known in the art.  *See id.* at

-4-

5:42-45.  Further, the specification acknowledges that the claimed wireless transceiver and MAC are comprised of standard, off-the-shelf components.  *See id.* at 4:32-5:19.

Like claim 1, all claims are directed to the same abstract idea of encrypting/decrypting select information, and none adds an inventive concept.  Each of the claims that depend from claim 1 (cls. 2-13) adds merely more conventional components to the wireless LAN device (such as a connector or antenna) or merely additional functions to the existing components, all of which are conventional.  Independent claim 14 is nearly identical to claim 2, except that it adds a generic baseband processor and subtracts the limitation of adding a plurality of encrypting bits, and the claims that depend from claim 14 (cls. 15-25) are nearly identical to dependent claims 3-13.  Independent claim 26 is basically identical to claim 16, and the claims that depend from claim 26 (cls. 27-37) are identical to the claims that depend from claims 1 and 14.  Independent claim 38 is identical to claim 1 except that it requires a plurality of LAN devices instead of just one, and it does not require encryption by adding a plurality of encrypting bits.  Its dependent claims (cls. 39-46) are identical to the aforementioned dependent claims.  Finally, independent method claim 47 is the same as claim 38, but is written in method-claim format, and its dependent claims (cls. 48-59) are method-claim analogs of the patent's other dependent claims.

### B.    The '117 and '161 Patents and Their Representative Claims

The '117 and '161 Patents, which share the same title, inventor, filing date, and assignee, and have nearly identical specifications, are directed to detecting intrusions into wireless MANETS (mobile ad-hoc networks).[2]  *See* '117 at 2:25-28.  Wireless MANETs admittedly were known, as were intrusion detection systems.  '117 at 1:13-15, 1:62-2:13.  According to the

---

[2] The only differences in the specifications, each of which incorporates by reference the other, *see* '117 Patent at 11:3-8, '161 at 11:23-28, are in the "Summary of the Invention" section. Accordingly, citations are to the '117 Patent only.

patents, however, "much of the details regarding the implementation of intrusion detection in

MANETS have yet to be determined" and "the particular types of node characteristics which can

reliably indicate whether a node if a rouge [sic] node attempting to intrude upon the network still

remain largely undefined." '117 Patent at 2:14-21.  The patents' purported solution is to monitor

transmission of data between network nodes for one of several different criteria, and to generate

an alert if that criterion is detected.  For example, asserted '117 Patent, cl. 10, and '161 patent, cl.

29, recite:[3]

| 10. A mobile ad-hoc network (MANET) comprising: | 29. A mobile ad-hoc network (MANET) comprising: |
|---|---|
| a *plurality of nodes* **for transmitting data therebetween** using a media access layer (MAC), each of said nodes having a respective MAC address associated therewith; and | a *plurality of nodes* **for transmitting data** via a medium access control (MAC) layer, each node having a MAC address associated therewith to be transmitted with data sent therefrom; and |
| a *policing node* **for detecting intrusions into the MANET by** | a *policing node* **for detecting intrusions into the MANET by** |
| **monitoring** transmissions among said plurality of nodes to detect failed attempts to authenticate MAC addresses; and | **monitoring** transmissions among said plurality of nodes to detect collisions of a same MAC address; and |
| **generating** an intrusion alert based upon detecting a number of failed attempts to authenticate a MAC address. | **generating** an intrusion alert based upon detecting a threshold number of collisions of a same MAC address. |

The only components (italicized) in cls. 10 and 29 are recited using functional language (bolded),

and cls. 10 and 29, like all other claims, provide no limitation on ***how*** the monitoring is

performed (the claims merely recite what is monitored) or ***how*** an alert is generated.

Claim 10 of the '117 Patent and claim 29 of the '161 Patent are representative of all

---

[3] L3Harris's counterclaims allege that Huawei infringes "one or more claims" of the '117 and
'161 Patents, but specifically identifies only claim 10 of the '117 Patent and claim 29 of the '161
Patent.  D.I. 8 at ¶¶ 349, 362.  As explained below, those claims are nearly identical.

claims of the '117 Patent (1-62) and of the '161 Patent (1-78), as all claims are "substantially similar and linked to the same abstract idea" as '117 Patent cl. 10 and '161 Patent cl. 29—to wit, monitoring communications to detect suspicious behavior and generating an alert.  *See Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014).  All claims monitor the same class of information (transmissions among nodes) to produce the same result ("generating an intrusion alert").  The only difference between the claims is ***what*** criteria the monitoring is looking to detect and, as a result, what the intrusion detection alert is "based upon" (*i.e.*, detection of the specified criteria).[4]  Indeed, every independent claim can be written as a method of or apparatus for "monitoring transmissions to detect [X] and generating an intrusion alert based on detecting [X]"—confirming they are abstract.

## IV.    <u>LEGAL STANDARD</u>

"A motion to dismiss pursuant to Rule 12(b)(6) challenges the legal sufficiency of the complaint."  *Morgan v. Scott*, 83 F. Supp. 3d 616, 620 (D. Del. 2015).[5]  Dismissal is proper if L3Harris "fail[s] to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  In considering this motion, the Court may consider "the pleadings, public record, orders, exhibits

---

[4] *E.g.*, frame check sequence errors ('117, cls. 1, 9, 32, 40 ); failed attempts to authenticate MAC addresses ('117, cls. 2-3, 10-11, 17, 33-34, 41-42, 48 ); illegal NAV value ('117, cls. 4, 12, 18, 23, 35, 43, 49, 54 ); contention/contention-free mode operation ('117, cls. 5-6, 13-14, 19-20, 24, 27-28, 31, 36-37, 44-45, 50-51, 55, 58-59, 62); service set IDs ('117, cls. 7, 15, 21, 25, 29, 38, 46, 52, 56, 60; '161, cls. 2, 33); transmission over a specific channel ('117, cls. 8, 16, 22, 26, 30, 39, 47, 53, 57, 61; '161, cls. 3, 34); transmission during an unauthorized period ('161, cls. 1, 4, 32, 35, 63-78); integrity check values ('161, cls. 5, 13, 36, 63, 71); usage of non-consecutive MAC sequence numbers ('161, cls. 6, 14, 37, 45, 64, 72); collisions of certain types of packets ('161, cls. 7-10, 15-18, 22-25, 38-41, 46-49, 53-56, 65-68, 73-76); collisions of the same MAC address ('161, cls. 11-12, 19-21, 26-31, 42-44, 50-52, 57-59, 60-62, 69-70, 77-78).

[5] "A Fed. R. Civ. P. 12(b)(6) motion to dismiss a counterclaim is decided under the same standard as a Fed. R. Civ. P. 12(b)(6) motion to dismiss a complaint."  *Cornell Univ. v. Illumina, Inc.*, No. 10-433-LPMPT, 2012 WL 1885129, at *1 n.12 (D. Del. May 23, 2012).

attached to the complaint, and documents incorporated into the complaint by reference." *Apotex, Inc. v. Senju Pharm. Co.*, No. 12-196-SLR, 2015 WL 1968493, at *1 (D. Del. May 1, 2015). "To overcome a motion to dismiss, the defendant's counterclaim must plead [with] 'enough factual matter that, when taken as true, states a claim to relief that is plausible on its face.'" *EMC Corp. v. Zerto, Inc.*, No. 12-956-GMS, 2014 WL 3809365, at *1 (D. Del. July 31, 2014) (quoting *In Re Bill of Lading Transm'n and Processing Sys. Patent Litig.*, 681 F.3d 1323, 1331 (Fed. Cir. 2012)).

Patentability under 35 U.S.C. § 101 is a threshold legal issue. *See Bilski v. Kappos*, 561 U.S. 593, 602 (2010). Accordingly, the § 101 inquiry is properly raised at the pleadings stage if it is apparent from the face of the patent that the asserted claims are not directed to eligible subject matter. *See Cleveland Clinic Found. v. True Health Diagnostics LLC*, 859 F.3d 1352, 1360 (Fed. Cir. 2017), *cert. denied*, 138 S. Ct. 2621 (2018). Further, courts are permitted to analyze § 101 issues based on "representative claims" where, as here, the challenged claims are "substantially similar and linked to the same abstract idea." *Content Extraction*, 776 F.3d at 1348; *Sandbox Software, LLC v. 18Birdies, LLC*, No. 18-1649 (MN), 2019 WL 2524780, at *3 (D. Del. June 19, 2019) (Noreika, J.).

Claim construction is not a prerequisite to determining § 101 eligibility. Rather, patent-eligibility is a threshold issue that a court may consider prior to construction. *See Bancorp Servs., L.L.C. v. Sun Life Assurance Co. of Canada*, 687 F.3d 1266, 1273 (Fed. Cir. 2012) (finding "no flaw in the notion that claim construction is not an inviolable prerequisite to a validity determination under 101"). No formal claim construction is required where, as here, the asserted claims disclose "no more than 'an abstract idea garnished with accessories'" and there is "no 'reasonable construction that would bring them within patentable subject matter.'"

*Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 719 (Fed. Cir. 2014) (Mayer, J., concurring).

**V.**      <u>**ARGUMENT**</u>

     **A.**      **L3Harris's Florida State Law Counterclaim Should Be Dismissed**

The Court should dismiss L3Harris's Count Seventeen for two independent reasons. L3Harris's state law counterclaim fails to allege facts sufficient to plead a violation of Florida unfair competition law and is preempted by federal law.

     **1.**      **L3Harris's Florida Unfair Competition Counterclaim Is Deficient On The Merits**

The Court should dismiss L3Harris's Florida state law counterclaim, which relies on "Florida's Consumer protection act, including FLA. STAT. § 501.204" of the FDUTPA (D.I. 8 at ¶ 322), because Huawei's alleged misconduct is not "of any trade or commerce" as defined under the FDUTPA. *Boat Owners Ass'n of U.S. v. Flagship Towing LLC*, No. 2:15-cv-197-FTM-29CM, 2015 WL 4548698, at \*2-3 (M.D. Fla. July 28, 2015) (holding that accused conduct did not violate the FDUTPA because it did not fall within the statute's definition of "trade or commerce").

The FDUTPA prohibits "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any ***trade or commerce***." Fla. Stat. § 501.204(1) (emphasis added). The FDUTPA defines "trade or commerce" as "the advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, of any good or service, or any property, whether tangible or intangible, or any other article, commodity, or thing of value, wherever situated." Fla. Stat. § 501.203(8). Conduct that does not fall within the statute's definition of "trade or commerce" cannot give rise to a FDUTPA claim. *See, e.g.*, *Boat Owners*, 2015 WL 4548698, at \*2.

Here, L3Harris has failed to allege that Huawei is conducting any "trade or commerce"

with respect to either Huawei's alleged failure to timely make disclosures to standard-setting organizations or bringing a lawsuit allegedly without first making a FRAND offer.  Count Eighteen is devoid of any allegation that Huawei has advertised, solicited, marketed, provided, offered, or distributed any good or service.  L3Harris's allegations related to filing this lawsuit are not "trade or commerce," since "[c]onduct occurring during the exercise of a legal remedy— including *filing a lawsuit or issuing pre-suit demand letters*—cannot give rise to a FDUTPA claim because the pursuit of a legal remedy does not fall within FDUTPA's definition of 'trade or commerce.'"  *Id.* at *2 (emphasis added); *see also Baker v. Baptist Hosp., Inc.*, 115 So. 3d 1123, 1124 (Fla. Dist. Ct. App. 2013) ("We affirm because the pursuit of legal remedies . . . does not fall within the definition of 'trade or commerce.'").  L3Harris's allegations concerning Huawei's alleged standard-setting misconduct also do not fall within the definition of "trade or commerce," set forth above.  Therefore, L3Harris's allegations cannot support a FDUTPA claim, *see Boat Owners*, 2015 WL 4548698, at *3, and should be dismissed.

### 2.    L3Harris's Florida Unfair Competition Counterclaim Is Preempted By Federal Law, And Thus Should Be Dismissed

The Federal Circuit has confirmed that federal law preempts a state law counterclaim when it "occup[ies] a field identical in scope with [an affirmative] defense."  *Semiconductor*, 204 F.3d at 1382.  Here, Count Seventeen of L3Harris's counterclaims is a state law counterclaim predicated on the very same acts that form the basis of L3Harris's federal law unenforceability defense.  Thus, this state law counterclaim should be dismissed for this independent reason.

L3Harris's Florida unfair competition counterclaim is predicated on two alleged actions by Huawei:  (1) "failing to timely disclose the existence of patent or patent applications related to the Huawei LTE Asserted Patents in accordance with the requirements of [standards-setting organizations]" and (2) "failing to abide by its FRAND commitments, including refusing to

license the Huawei LTE Asserted Patents on FRAND terms and conditions" before initiating this lawsuit.  D.I. 8 at ¶ 327.

But these allegations merely parrot the bases for L3Harris's purported unenforceability defense—they are nothing more than a bare re-pleading of one of L3Harris's federal law affirmative defenses.  *See* D.I. 8 at ¶¶ 114–23.  For example, with respect to Huawei's disclosure of its patents to standard-setting organizations, L3Harris's unenforceability defense is based on the allegations that "Huawei's actions, including . . . Huawei's breach of . . . its FRAND commitments, render Huawei's allegedly standard-essential patents unenforceable," and that "[f]urther facts detailing Huawei's standard-setting misconduct are given below with respect to Harris's counterclaims."  *Id.* at ¶¶ 116-21.  In addition, with respect to Huawei bringing suit against L3Harris, allegedly without offering a FRAND license first, L3Harris's unenforceability defense is based on the assertion that "[f]iling counterclaims for infringement against a willing licensee without having communicated terms of a FRAND offer breached Huawei's obligations and constituted standard-setting misconduct."  *Id.* at ¶ 121.

Thus, the allegations as pleaded for L3Harris's state law counterclaims completely overlap with the alleged misconduct giving rise to L3Harris's unenforceability defense and, as in *Semiconductor Energy Lab.*, "do not take [L3Harris's] application of [the Florida consumer protection] statute outside the ambit of the [unenforceability] defense."  204 F.3d at 1382; *see also Alcon Labs., Inc. v. Allied Vision Grp., Inc.*, No. 18-cv-61638, 2019 WL 2245584, at *4 (S.D. Fla. Mar. 7, 2019), *report and recommendation adopted.*, No. 18-cv-61638, 2019 WL 2245262 (S.D. Fla. Apr. 2, 2019) (dismissing counterclaim based on Florida common law and the FDUTPA as "redundant and unnecessary" compared to issues raised in the complaint and affirmative defenses).

Because L3Harris's state law counterclaim is duplicative of its purported unenforceability defense, it should be dismissed.  *See Semiconductor*, 204 F.3d at 1382 (finding allegations that "completely overlap[] with the alleged misrepresentations giving rise to [an affirmative] defense" preempted by federal law); *see also Alcon Labs.*, 2019 WL 2245584, at *3.

### B.   L3Harris's Patent Infringement Counterclaims Should Be Dismissed For Failure To State A Claim Under 35 U.S.C. § 101

The Court should dismiss L3Harris's Counts Eighteen, Nineteen, and Twenty under 35 U.S.C. § 101.  L3Harris's patent infringement counterclaims fail because every Challenged Claim recites patent-ineligible subject matter.  Abstract ideas are *per se* not patentable.  *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014).  Courts must apply a two-step framework "for distinguishing patents that claim . . . abstract ideas from those that claim patent-eligible application of those concepts."  *Id.* at 217.

#### 1.   The Claims Of The L3Harris Asserted Patents Are Directed To An Abstract Idea

At *Alice* step one, courts "must first determine whether the claims at issue are directed to a patent-ineligible concept."  *Id.* at 218.  This requires "looking at the 'focus' of the claims, their 'character as a whole,'" to determine if they are directed to excluded subject matter.  *Elec. Power*, 830 F.3d at 1353.  "The inquiry often is whether the claims are directed to 'a specific means or method' for improving technology or whether they are simply directed to an abstract end-result."  *RecogniCorp*, 855 F.3d at 1326 (citation omitted).  A claim that can be performed mentally or analogized to brick-and-mortar concepts likely is directed to an abstract idea.  *See CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1371 (Fed. Cir. 2011); *see also Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1314 (Fed. Cir. 2016).

##### a.   The '572 Cryptography Patent

An examination of the individual limitations of representative claim 1 of the '572 Patent

confirms that the claims are directed to the abstract idea of encrypting and decrypting data.

Representative claim 1 recites a "secure wireless local area network (LAN) device comprising"

and sets forth merely generic components for implementing the desired security (encryption):

| Claim Language | Huawei's Explanation of the Limitation |
|---|---|
| a housing; | Generically recited without any meaningful limit; |
| a wireless transceiver carried by said housing; | Generically recited without any meaningful limit; |
| a medium access controller (MAC) carried by said housing; and | Generically recited without any meaningful limit; |
| a cryptography circuit carried by said housing and connected to said MAC and said wireless transceiver for encrypting both address and data information for transmission by at least adding a plurality of encrypting bits to both the address and the data information, and for decrypting both the address and the data information upon reception. | The circuit is described functionally and must be configured to:<br><br>(1) encrypt (*i.e.*, encode, using a key) the address and content information of a message by adding more than one encrypting bit to such data;<br><br>(3) decrypt (*i.e.*, decode, using a key) the same data upon receipt. |

In other words, the '572 Patent's claims are directed to encrypting and decrypting data—

*i.e.*, encoding and decoding data using a key—which is precisely what the Federal Circuit has

found abstract in several recent cases.  *See, e.g.*, *RecogniCorp*, 855 F.3d at 1326 (finding that the

claim "reflects standard encoding and decoding, an abstract concept long utilized to transmit

information"); *Return Mail, Inc. v. USPS*, 868 F.3d 1350, 1368 (Fed. Cir. 2017) (finding abstract

claims reciting "decoding . . . encoded data"); *Secured Mail Solutions LLC v. Universal Wilde,

Inc.*, 873 F.3d 905, 910 (2017) (finding abstract "claims generically provide for the encoding of

various data onto a mail object but do not set out how this is to be performed"); *see also*

*Personalized Media Commc'ns, LLC v. Amazon.com, Inc.*, 161 F. Supp. 3d 325, 333 (D. Del.

2015), *aff'd*, 671 F. App'x 777 (Fed. Cir. 2016) (holding patent-ineligible a claim directed to

abstract idea of encryption).  Importantly, these claims are not directed to any specific encryption

technique, reinforcing their abstractness.

Limiting the type of data encrypted, *i.e.*, to address and data information, does not save these claims from being abstract. *See SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1169 (Fed. Cir. 2018) ("We have already noted that limitation of the claims to a particular field of information — here, investment information — does not move the claims out of the realm of abstract ideas."). Indeed, incorporating particular types of information into an abstract idea does not make the idea any less abstract because "[i]nformation as such is an intangible" and limiting the abstract idea's application to particular information "does not change its character as information." *Elec. Power*, 830 F.3d at 1353. Accordingly, it is irrelevant that the claims recite particular information to be encrypted—*e.g.*, sender address, data information, etc.

Finally, the claims are not rooted in computer technology to address a problem specifically arising in the realm of computer networks. Protecting information from unauthorized eyes by encrypting it (*i.e.*, encoding it so that only authorized parties can access it) is a well-known, centuries-old technique. *Personalized Media*, 161 F. Supp. 3d at 333 ("Cryptography has been used to protect information since ancient Mesopotamia.").

### b.  The '117 and '161 Network Intrusion Detection Patents

The '117 and '161 Patents are directed to the idea of monitoring and analyzing information to detect suspicious behavior and generating an alert—precisely what the Federal Circuit found to be impermissibly abstract in *FairWarning*. *See* 839 F.3d at 1094. The claims at issue in *FairWarning* are indistinguishable from the claims here.[6] There, the claims recited "detecting improper access of a patient's protected health information (PHI) . . . in a health-care system computer environment" by "selection of at least one criterion . . . representing at least one

---

[6] Attached as Appendix A is a chart comparing representative claim 10 of the '117 Patent and representative claim 29 of the '161 Patent to the representative claim at issue in *FairWarning*.

of transactions or activities associated with the patient's PHI that is indicative of improper access" (*e.g.*, who accessed, when accessed, number of times accessed), "applying the rule to audit log data" to determine if the criterion has been met, storing in memory a hit if the criterion is met, and "provid[ing] notification if the event has occurred." *Id.* at 1096-97. Similarly here, these claims are directed to merely monitoring data (a transmission) to determine if a criterion is met (*e.g.*, the number of failed attempts to authenticate MAC addresses), and generating an alert if that criterion is met. As in *FairWarning*, the claims' use of a specific criterion to indicate improper access (*e.g.*, a count of the number of failed attempts to authenticate a MAC address) does not save the claims from abstractness. *See SAP Am.*, 898 F.3d at 1167 (holding impermissibly abstract claims directed to "selecting certain information, analyzing it using mathematical techniques, and reporting or displaying the results of the analysis").

The claims here are impermissibly abstract for the additional, independent reason that they merely introduce existing practices and mental processes into a new technological environment—namely, a computer network. The Federal Circuit has repeatedly rejected such claims. *See FairWarning*, 839 F.3d at 1094-95 (invalidating claims that "merely implement an old practice in a new environment"); *Intellectual Ventures I*, 850 F.3d at 1330 (invalidating claims directed to "an age-old practice" because an "abstract idea does not become nonabstract by limiting the invention to a particular . . . technological environment, such as the Internet"). Here, the claimed process has long been practiced by humans to detect intrusion into protected spaces or groups, such as a castle or a secret society where a password is required to pass the gates or enter the group. The gatekeeper would detect failed attempts to access the space/group and raise an alarm.

As this analogy confirms, these claims can be performed mentally or with simple pen and

Paper — further underscoring their abstractness.  *See, e.g.*, *CyberSource*, 654 F.3d at 1371 ("[M]ethods which can be performed mentally, or which are equivalent of human mental work, are unpatentable abstract ideas").  Monitoring data transmissions for specified anomalies, and generating an alert ("Intruder!") if such an anomaly is found, requires nothing more than one's mental faculties.  Moreover, automating abstract processes using computer technology is still abstract.  *See Credit Acceptance Corp. v. Westlake Servs.*, 859 F.3d 1044, 1055 (Fed. Cir. 2017) ("[M]ere automation of manual processes using generic computers does not constitute a patentable improvement in computer technology.").  Finally, as is readily apparent, the claims are not "necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks."  *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1257 (Fed. Cir. 2014).  Instead, the claims apply an abstract idea to a particular environment—a computer network.  But that does not render the claims any less abstract.  *See, e.g.*, *British Telecomms. PLC v. IAC/InterActiveCorp*, 381 F. Supp. 3d 293, 309 (D. Del. 2019) ("nothing about the invention constituted an improvement" because "[a]ny such improvement in [the] systems . . . is merely the consequence of using commonly understood . . . techniques 'in the context of electronic communications'" (quoting *Symantec*, 838 F.3d at 1318)).

### 2.        The Claims Of The L3Harris Asserted Patents Lack Inventive Concept

At *Alice* step two, courts search for an "'inventive concept' sufficient to 'transform' the claimed abstract idea into a patent-eligible application."  *Alice*, 573 U.S. at 221 (quoting *Mayo*, 566 U.S. at 73).  There is nothing inventive about implementing an abstract idea using "'well-understood, routine, conventional activit[ies]' previously known to the industry."  *Id.* at 225 (quoting *Mayo*, 566 U.S. at 73).  Limiting a claim to a particular environment also does not add any inventive concept to save an abstract claim from an ineligibility finding.  *Content Extraction*,

-16-

776 F.3d at 1348.

### a. The '572 Patent

Similar to the claims at issue in *Alice*, the '572 Patent's claims, viewed individually and as an ordered combination, simply instruct the practitioner to implement the abstract idea of encryption and decryption with routine, conventional computing components.  Here, with the abstract idea removed, all that is left in representative claim 1 is a generic housing, generic wireless transceiver, a generic MAC, and a generic cryptography circuit.[7]  Nowhere does the '572 Patent even suggest to have invented any of these standard components or that they are claimed in a novel arrangement.  Further, there is nothing inventive about adding "a plurality of encrypting bits" to the information being encrypted, as the specification admits that technique is known in the art.  '572 Patent at 5:42-44; *see Blue Spike, LLC v. Google Inc.*, No. 14-cv-01650-YGR, 2015 WL 5260506, at *7 (N.D. Cal. Sept. 8, 2015), *aff'd*, 669 F. App'x 575 (Fed. Cir. 2016) (holding ineligible "claims [that] do not discuss a novel cryptographic method, but merely contemplate 'well-understood, routine, conventional activity.'" (internal quotation marks and citation omitted)).  That the encryption is applied to address information as well as data information is of no consequence: "merely selecting information, by content or source, for [processing] does nothing significant to differentiate a process from ordinary mental processes." *Elec. Power*, 830 F.3d at 1355.

Further, the specification does not purport to override the normal operation of the recited generic components, including the generic, off-the-shelf cryptography circuit.  The "housing"

---

[7] The recitation of generic components, such as a "wireless transceiver" and "medium access controller," is insufficient to transform an abstract concept into a patent-eligible application.  *See Maxon, LLC v. Funai Corp.*, 726 F. App'x 797, 799-800 (Fed. Cir. 2018) ("[A] transceiver "do[es] not transform the claimed abstract idea into eligible subject matter under *Alice*."); *Alice*, 573 U.S. at 226 ("'communications controller'" is "purely functional and generic"); *Intellectual Ventures I*, 850 F.3d at 1328-29 (sending and receiving information using computers is routine and generic).

provides a housing for other components; the transceiver sends and receives information; the MAC implements a MAC protocol such as that set forth in the conventional 802.11 standard; and the cryptography circuit encrypts and decrypts information.  *See, e.g.*, '572 at 2:1-26.  All elements operate in their conventional manner, and the claims fail under § 101.

And the '572 Patent's claims do not purport to improve cryptography by claiming advances in how to encrypt data.  Instead, they recite conventional components using functional language.

### b.  The '117 and '161 Patents

The claims of the network intrusion patents do not recite anything inventive, either singularly or in combination, that might transform them into patent-eligible subject matter.  The claims' recitation of generic, conventional computer components—a wireless MANET and media access control (MAC)—does not add an inventive concept.  *Alice*, 573 U.S. at 223-24.  Those elements are recited at a high-level of generality, and the specifications establish that both components were conventional.  *See* '117 Patent at 1:13-15 (MANET well-known); *id.* at 1:62-2:13; '117 Patent at 5:53-58 and '161 at 6:6-10 (admitting that the nodes use the "MAC layer for transmitting data" and each having "respective MAC addresses associated therewith, as will be appreciated by those of skill in the art").  These types of components do not supply an inventive concept.  *See Mortg. Grader, Inc. v. First Choice Loan Servs. Inc.*, 811 F.3d 1314, 1324-25 (Fed. Cir. 2016) (holding that "a computer network" did not add an inventive concept); *Alice*, 573 U.S. at 226 (finding that a "communications controller" is "purely functional and generic").

Representative claim 10 as a whole is written in entirely functional terms, setting forth a desired result instead of a particular solution for achieving that result—a hallmark of claims that lack an inventive concept.  *See Elec. Power*, 830 F.3d at 1356 ("[T]he essentially result-focused, functional character of claim language has been a frequent feature of claims held ineligible under

§ 101.").  The "monitoring" and "generating" steps call for the ability to detect intrusions and generate alerts based on, for example, detecting collisions of, or failed attempts to authenticate, a MAC address.  But the claims are silent on *how* to detect a collision or a failed attempt, or even *how* to generate an intrusion alert based on such detections.  *See id*. at 1355 ("Inquiry therefore must turn to any requirements for *how* the desired result is achieved.").  As in *Electric Power*, "in this case the claims' invocation of computers [and] networks . . . does not transform the claimed subject matter into patent-eligible applications."  *Id.*

Finally, even if L3Harris argues that an inventive concept exists in selection of the criterion to be detected (*e.g.*, "failed attempts to authenticate MAC addresses," '117 Patent, cl. 10, which may be "[a]ny number of failed attempts," *id*. at 6:40-44), that argument fails.  As the Federal Circuit has explained, "merely selecting information, by content or source, for collection, analysis, and [announcement] does nothing significant to differentiate a process from ordinary mental processes, whose implicit exclusion from § 101 undergirds the information-based category of abstract ideas."  *Elec. Power*, 830 F.3d at 1355.  Moreover, the specification acknowledges that in existing security monitoring software, it was conventional to detect intrusion by anomalies in network layers, such as the MAC layer protocols.  *See* '117 at 2:4-8.

### C.   L3Harris's Invalidity Counterclaims Should Be Dismissed Because They Fail To Allege Facts Sufficient To Meet The Pleading Standards

The Court should dismiss L3Harris's Counts Six to Ten because they fail to state a claim upon which relief can be granted under *Twombly* and *Iqbal*.  Courts in this District have applied the *Twombly/Iqbal*-pleading standard to invalidity counterclaims in patent cases.  *See, e.g.*, *Senju Pharm. Co. v. Apotex, Inc.*, 921 F. Supp. 2d 297, 301, 303 (D. Del. 2013) (holding "the pleading standards set forth in *Twombly* and *Iqbal* apply to counterclaims of invalidity" and "a formulaic recitation of a cause of action's elements will not do"); *Internet Media Corp. v. Hearst*

*Newspapers, LLC*, No. 10-690-SLR, 2012 WL 3867165, at *2 (D. Del. Sept. 6, 2012) (same); s*ee also Quality Edge, Inc. v. Rollex Corp.*, 709 F. App'x 1000, 1008 (Fed. Cir. 2017) (finding "no abuse of discretion in the district court's dismissal of [defendant]'s invalidity counterclaim" because it "falls far short of [] *Iqbal* and *Twombly*").

Here, L3Harris' counterclaims of invalidity are impermissibly conclusory and they do not provide sufficient factual allegations, as required by *Twombly* and *Iqbal*.  "[A]lthough 'counterclaims of invalidity do not need detailed factual allegations[,]' they need to, at a minimum, not only provide notice of what particular type of claims of invalidity are at issue, but also bolster those allegations with at least enough 'supporting factual allegations' to render the claims plausible." *Idenix Pharm., Inc. v. Gilead Scis., Inc.*, No. 13-1987-LPS, 2014 WL 4222902, at *6 (D. Del. Aug. 25, 2014) (quoting *EMC Corp.*, 2014 WL 3809365, at *2).  As with all of its counterclaims, L3Harris's invalidity counterclaims "must contain either direct or inferential allegations respecting *all the material elements* necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562 (emphasis added).

L3Harris's invalidity counterclaims insufficiently identify only a single piece of alleged prior art with respect to the '969 Patent (Count Six) and no allegedly relevant art with respect to any of the other Huawei Asserted Patents.  Moreover, all of L3Harris's invalidity counterclaims fail to disclose how any alleged prior art discloses any of the claim limitations of the Huawei Asserted Patents.  Thus, L3Harris fails to provide sufficient detail to give rise to a plausible claim of relief as required by *Twombly* and *Iqbal*, and these invalidity counterclaims should be dismissed.  *See, e.g.*, *Idenix Pharm.*, 2014 WL 4222902, at *6-7.

## VI.    <u>CONCLUSION</u>

For the foregoing reasons, Huawei requests that the Court dismiss Counts Six, Seven, Eight, Nine, Ten, Seventeen, Eighteen, Nineteen, and Twenty of L3Harris's Counterclaims.

Dated: September 24, 2019

Respectfully submitted,

Of Counsel:

YOUNG CONAWAY STARGATT &
TAYLOR, LLP

Kevin J. Post
Alexander E. Middleton
ROPES & GRAY LLP
1211 Avenue of the Americas
New York, NY 10036-8704
(212) 596-9000
kevin.post@ropesgray.com
alexander.middleton@ropesgray.com

 /s/   *Anne Shea Gaza*                         
Adam W. Poff (No. 3990)
Anne Shea Gaza (No. 4093)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
apoff@ycst.com
agaza@ycst.com
swilson@ycst.com

James R. Batchelder
ROPES & GRAY LLP
1900 University Avenue, 6th Floor
East Palo Alto, CA 94303-2284
(650) 617-4000
james.batchelder@ropesgray.com

*Attorneys for Plaintiff*

01:25233017.1

## <u>CERTIFICATE OF SERVICE</u>

I, Anne Shea Gaza, hereby certify that on September 24, 2019, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> David M. Fry, Esquire
> Shaw Keller LLP
> I.M. Pei Building
> 1105 North Market Street, 12th Floor
> Wilmington, DE 19801
> *dfry@shawkeller.com*
>
> *Attorneys for Defendant*

I further certify that on September 24, 2019**,** I caused the foregoing document to be served via electronic mail upon the above-listed counsel and on the following:

> Corey Johanningmeier, Esquire
> Bunsow De Mory LLP
> 701 El Camino Real
> Redwood City, CA  94063
> *cjohanningmeier@bdiplaw.com*
>
> *Attorney for Defendant*

Dated:  September 24, 2019

YOUNG CONAWAY STARGATT &
 TAYLOR, LLP

*/s/  Anne Shea Gaza*
Adam W. Poff (No. 3990)
Anne Shea Gaza (No. 4093)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 N. King Street
Wilmington, Delaware 19801
302-571-6600
*apoff@ycst.com*
*agaza@ycst.com*
*swilson@ycst.com*

*Attorneys for Plaintiff*

2